**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-2173

_____

RAYMOND ALEXANDER,
                                         Appellant

v.

C.O. FRITCH; BERT BROCKLEHURST; SHARON BURKS;
EDWARD PAVLICK; PAUL STOWITZKY; C.O. KITE;
C.O. VISCUSI; RICHARD CULP; WILLIAM WOODS;
BARBARA PALLADINO; FRED RUFFO; MICHAEL MAHLMEISTER;
MICHAEL HARLOW; JEFFREY BEARD;
TIM PLEACHER; CINDY WATSON

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 07-cv-01732)
Magistrate Judge:  Honorable Lisa P. Lenihan

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 23, 2010

Before: BARRY, AMBRO and COWEN, Circuit Judges

(Opinion filed: October 5, 2010)

_____

OPINION

_____

PER CURIAM

Raymond Alexander, a prisoner in Pennsylvania, appeals from the District Court

decision[1] granting the Defendant-Appellees' motion for summary judgment. For the reasons that follow, we will affirm the judgment of the District Court.

I

Inasmuch as we write primarily for the parties, and because the District Court provided a detailed explanation of the facts underlying Alexander's complaint, see D. Ct. Doc. No. 63, 3-24, we will provide only a brief recitation of the procedural and factual background.

Since his transfer to SCI-Mercer in 2005, Alexander has filed numerous formal grievances related to the conditions of his imprisonment, as well as grievances related to the denials of his other grievances. In 2007, Alexander filed in the District Court an action under 42 U.S.C. § 1983, raising allegations of unlawful retaliation by sixteen Department of Corrections ("DOC") employees for protected conduct dating back to his 2005 transfer to SCI-Mercer.[2] He amended his complaint in November 2008, at which point he alleged that DOC employees: (1) denied him proper housing; (2) denied him the non-smoking, compatible cell mates he requested; (3) failed to properly investigate or

_____

[1] The parties consented to proceed before a Magistrate Judge.

[2] This was Alexander's second such action since his incarceration. In 2004, he filed in the United States District Court for the Middle District of Pennsylvania a § 1983 action against thirty named DOC employees, as well as six John Doe defendants, alleging various instances of retaliation for protected conduct during his incarceration at other institutions. The District Court dismissed several claims and granted summary judgment for the defendants on the remaining claims, and we affirmed. See Alexander v. Forr, C.A. No. 06-4467 (judgment entered August 28, 2008).

2

adjudicate his grievances; (4) failed to provide required programming services; and (5) failed to provide institutional support for a favorable parole recommendation, all in retaliation for Alexander's prior lawsuit and administrative grievances. As the District Court noted, Alexander exhausted all of these claims through the prison's administrative grievance system as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

During the pendency of the District Court action, Alexander sought leave to supplement his complaint with five unexhausted claims against Defendant-Appellee Woods. Alexander alleged that, in retaliation for his protected conduct, Woods: (1) had Alexander fired from inmate employment; (2) was involved in a false misconduct charge against Alexander; (3) prevented Alexander from receiving outside work clearance; (4) denied him access to mandatory program services; and (5) was involved in the improper confiscation of Alexander's typewriter.[3] The Defendants did not oppose the request and the District Court granted his motion.

The Defendants eventually moved for summary judgment, which the District Court granted as to all claims. Alexander now appeals.

---

[3] Alexander also alleged that, during a meeting, Woods threatened to place him in restricted housing for questioning the decision to terminate his employment. The District Court overlooked this claim, but Alexander has not raised the issue on appeal; it is therefore waived. See Laborers' Int'l Union v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994).

II

We have jurisdiction pursuant to 28 U.S.C. § 1291. We may affirm on any grounds supported by the record. See Hughes v. Long, 242 F.3d 121, 122 n.1 (3d Cir. 2001). When reviewing a district court's grant of summary judgment, we exercise plenary review, viewing the facts in the light most favorable to the non-moving party. See Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008). We apply the same standard that governs in district court proceedings, under which "a party is entitled to summary judgment only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(c)).

Section 1983 imposes liability for retaliatory conduct by prison officials if the conduct was motivated "in substantial part by a desire to punish [the] individual for the exercise of a constitutional right," Allah v. Seiverling, 229 F.3d 220, 224 (3d Cir. 2000) (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 386 (6th Cir. 1999) (en banc)), such as filing lawsuits and grievances related to incarceration. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). To prevail on a § 1983 retaliation claim, the prisoner must prove: (1) that the conduct leading to the alleged retaliation was constitutionally protected; (2) that he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) that his protected conduct was a substantial or motivating

4

factor in the decision to discipline him. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). However, "prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Id. at 334.

*Denial of Proper Housing and Requested Cell Mates*

Alexander claimed that after he made requests to be (1) housed away from two cell mates who sexually harassed him and (2) moved to a non-smoking cell block, he was given an undesirable housing assignment. Alexander was transferred to the unit in question because it was a non-smoking unit with available space, and his request to be moved was based, in part, on his desire to live in a non-smoking unit. See D. Ct. Doc. No. 62-1, 19-20, 27-28, 32. He expressed to SCI-Mercer officials his displeasure with the transfer because inmates were sneaking cigarettes despite the unit's nonsmoking policy. That concern was addressed in a response by Defendant Pavlick. We agree with the District Court that summary judgment was appropriate because Alexander failed to demonstrate that his transfer was either adverse or retaliatory. Alexander made two requests of SCI-Mercer officials: that he be moved away from his harassing cell mates and that he be housed in a non-smoking unit. As his requests were granted, there is no basis for a retaliation claim.

Alexander also complained that his attempts to be housed with cell mates of his choosing were denied for retaliatory reasons, whereas other inmates were often permitted to choose cell mates. The District Court reasoned that the prison's failure to allow

5

Alexander to choose his own cell mates was not an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights. The District Court also held that the defendants' evidence showed a legitimate penological reason for denying Alexander's requests: in each request, Alexander sought a change that would require other inmates to move, and SCI-Mercer has a policy of only permitting such changes if all inmates agree. See D. Ct. Doc. No. 55-2, 22. We need not reach the question whether Alexander suffered an adverse action because we agree with the District Court that even if he did, the defendants' actions were premised on a legitimate penological reason and Alexander has presented no material evidence disputing that conclusion.

On appeal, Alexander complains that the District Court overlooked his argument that, despite bed availability and a practice by SCI-Mercer officials that would have permitted Alexander's preferred cell mate, Philbert Wilson, to join him, Wilson was passed over for an opportunity to do so. Alexander argues that this action resulted from the officials' displeasure with his own repeated grievances. Assuming *arguendo* that this claim demonstrates impermissible retaliatory conduct, it is plain from the record that SCI-Mercer officials had a legitimate penological reason for denying Alexander's requests. Both Alexander and Wilson filed grievances citing problems with the institution's smoking policy as a basis for Wilson to be moved into Alexander's cell. See D. Ct. Doc. No. 62-1, 43. Their complaints were viewed as pretexts to manipulate officials into housing them together. See id. In response to a related grievance, an SCI-Mercer official

6

also indicated that Alexander was inappropriately trying to dictate who should be permitted to bunk with him. See id. at 55. Thus, it is apparent that the denial of Alexander's requests to have Wilson as a cell mate were reasonably related to the prison's legitimate goals of maintaining control over inmates and preventing abuse of the prison's accommodation policies. Again, the record does not reflect a material factual dispute regarding the prison's penological interest.

*Improper Handling of Grievances*

Alexander argued that his grievances were denied at each level in retaliation for his continued use of the grievance system. The District Court granted summary judgment as to that claim, reasoning that it was unclear that the mere denial of a grievance constitutes an adverse action for purposes of a § 1983 complaint. We need not reach that issue because we agree with the District Court's alternate reason for granting summary judgment. That is, Alexander failed to produce any evidence, beyond his bare assertions, that the denials of his grievances were in any way motivated by retaliatory animus. See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (a retaliation claim cannot rest on the "logical fallacy of *post hoc, ergo propter hoc*, literally 'after this, therefore because of this'").

*Failure to Provide Required Programming*

Next, Alexander argued that Defendant Palladino, a psychological services specialist at SCI-Mercer, refused to schedule Alexander's mandatory programs – thereby

7

endangering his chance of getting parole – because he had filed a grievance against her. Summary judgment was appropriate with regard to this claim because it is clear from the record that Alexander's claim was based on a mistake. Alexander believed that Palladino failed to schedule him for the necessary programs, and filed a second grievance as a result. Evidently, he *was* scheduled for those programs and, when he realized this, dropped the grievance. See D. Ct. Doc. No. 62-2, 10-11.

*Failure to Provide a Favorable Parole Recommendation*

Alexander complained that DOC employees retaliated against him for filing grievances by refusing to give him a favorable parole recommendation. DOC officials justified the poor recommendation by citing Alexander's failure to fully accept responsibility for his crime – which involved traveling across state lines to have sexual relations with an underage girl – as evidenced by, *inter alia*, his written account of the offense. See id. at 56-64, 77. The District Court agreed that Alexander's acceptance of responsibility was a necessary component of his rehabilitation, which is a legitimate penological interest, see Ramirez v. Pugh, 379 F.3d 122, 128 (3d Cir. 2004), and deferred to the officials' assessment of Alexander's qualifications for parole. Alexander has provided no reasons to conclude that his parole was denied for retaliatory reasons or that there were not legitimate reasons for denying him parole.

*Alexander's Supplemental Claims*

More than a year into the litigation, Alexander sought the District Court's permission to supplement his complaint so that he could include several claims against

8

Defendant Woods that were unexhausted at the time. The defendants filed a response indicating that they did not oppose Alexander's request, and the District Court allowed Alexander to supplement his complaint. In granting summary judgment in favor of the defendants, the District Court noted that Alexander's supplemental claims were unexhausted, but considered those claims on the merits and concluded that Alexander was not entitled to relief. Having lost, Alexander now argues that the District Court erred in considering his supplemental claims because the defendants did not expressly waive exhaustion as a defense. We disagree.

Failure to exhaust administrative remedies is an affirmative defense, which may be waived if not pleaded by the defendant. See Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002). Alexander suggests that although the defendants acceded to his request to supplement his complaint, their failure to expressly discuss and waive the exhaustion requirement in their response indicates that no waiver occurred and that his claims against Woods should have been dismissed without prejudice. Although defendants are required to expressly waive an exhaustion requirement in certain contexts, such as petitions under 28 U.S.C. § 2254, see § 2254(b)(3), there is no such requirement for defendants to a prisoner suit under § 1983. Cf. Allen v. Zavaras, 568 F.3d 1197, 1201-02 (10th Cir. 2009) (noting the distinction in considering whether § 2254 permits *sua sponte* dismissal of unexhausted claims for post-conviction relief). Thus, the defendants in this case waived any defense stemming from Alexander's failure to exhaust his additional claims against Woods, and the District Court appropriately considered the merits of each claim.

9

*Termination from Prison Employment*

Alexander first argued that Woods had him fired from his job without just cause. Sometime in 2009, Alexander's block runner job was discontinued and he was reassigned as a janitor. Because he did not wish to be a janitor, he requested a meeting with prison staff to discuss reassignment. At the same time, his supervising correctional officer requested a staffing[4] because Alexander refused to work and exhibited a bad attitude. During the staffing, Mercer officials informed Alexander of the negative performance report and terminated his employment. See D. Ct. Doc. No. 62-2, 128-34. The District Court reasoned that the defendants demonstrated a legitimate penological reason – poor work performance and inappropriate demeanor – for terminating Alexander's job. The record supports this conclusion, and Alexander has provided no material evidence to the contrary.

*Misconduct Report*

Next, Alexander argued that Woods was involved in filing a false misconduct charge against him that resulted in disciplinary action. Alexander was charged with unauthorized use of the mail and lying to a prison employee. The charges stemmed from a search of his cell that ultimately yielded a letter from Alexander to his brother asking

---

[4] It appears from the record that a "staffing," which may be formal or informal, is a meeting between an inmate and prison officials held to discuss the inmate's conduct and eligibility for privileges, such as employment and parole.

him to write to the prison superintendent about alleged mistreatment. At the misconduct hearing, the hearing examiner dismissed the first charge against Alexander, but found him guilty by a preponderance of the evidence of lying, based on Alexander's apparent admission of guilt. See id. at 189-91, 198-99. We agree with the District Court that because there was evidence to support the hearing examiner's finding of guilt, there was a legitimate penological reason for the charge and punishment. The record reveals no genuine factual dispute regarding the basis for Alexander's conviction, so summary judgment was appropriate.

*Outside Work Clearance*

Alexander also claimed that Woods arbitrarily prevented him from receiving consideration for outside work clearance, which permits inmates to perform physical labor on the prison's outdoor grounds. The record demonstrates that Alexander's request for outside work clearance was denied because of his poor work history and his restriction to light-duty work, which necessarily precluded him from being assigned the jobs available for prisoners with outside work clearance. See Dist. Ct. Doc. No. 55-2, 12. Thus, despite Alexander's claims of retaliation, there was a legitimate penological reason for denying his request, and there is no material evidence in the record indicating a dispute as to that conclusion.

*Mandatory Program Services*

Alexander also alleged that Woods denied him access to participation in mandatory programs. In 2009, the method by which prisoners were evaluated was

11

changed so that each prisoner would receive a score under the Offender Violence Risk Topology ("OVRT"), which would be used to recommend appropriate violence prevention programming; completing that programming was a prerequisite for parole eligibility. Each prisoner's OVRT score was to be issued at his next formal staffing. Alexander requested a formal staffing and filed a grievance when his request was denied. In rejecting his grievance, Mercer officials reasoned that formal staffings were scheduled in accordance with DOC policy, and not solely based on an inmate's request, and that Alexander was attempting to circumvent standard staffing procedures to obtain his OVRT score ahead of other inmates. Assuming *arguendo* that Alexander satisfied the first two prongs of a retaliation claim, and viewing the record in the light most favorable to him, Alexander has not made any showing that the denials of his staffing request and related grievance were retaliatory. His allegation of causation rests on no more than his bare assertion that Woods acted in retaliation. As explained above, the fact that a decision was adverse to a prisoner is not, without more, evidence of retaliation.

*Confiscation of Alexander's Typewriter*

Finally, Alexander complained that Woods was involved – without specifying the nature of that involvement – in confiscating his typewriter, which was withheld for two weeks. Woods denied any such involvement. See Dist. Ct. Doc. No. 55-2, 13. In granting summary judgment, the District Court reasoned that confiscating Alexander's typewriter did not amount to an adverse action sufficient to support a retaliation claim.

12

We need not consider whether the confiscation constituted an "adverse action" because we conclude that summary judgment was appropriate for another reason. That is, Alexander failed to make any showing that Woods was involved in confiscating his typewriter.

Individual liability can be imposed under § 1983 only if the defendant played an "affirmative part" in the alleged misconduct. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Id. Here, Alexander did not allege that Woods confiscated his typewriter, directed others to do so, or acquiesced in retaliatory conduct. Woods' affidavit indicates that he had no involvement in that action, and Alexander has presented no evidence, other than his vague allegation of Woods' "involvement," that Woods played any affirmative role in confiscating the typewriter.

Thus, summary judgment was appropriate and we will affirm.