**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1455
_____

LEO Z. TARR,

Appellant

vs.

FEDEX GROUND

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 08-cv-01454)
District Judge:  Honorable Gary L. Lancaster

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 14, 2010
Before:  SLOVITER, CHAGARES and WEIS, <u>Circuit</u> <u>Judges</u>
Opinion filed: October 27, 2010

_____

OPINION
_____

PER CURIAM.

Leo Tarr, proceeding *pro se*, appeals from the District Court's order

granting FedEx Ground's ("FedEx") motion for summary judgment.  For the reasons that

follow, we will affirm the judgment of the District Court.

1

## I

Appellant Leo Tarr is a black man from Liberia. In September 2004, he was hired by Premier Technologies as a computer consultant. He was assigned to work at FedEx Ground for one year. In April 2005, FedEx hired Tarr as a Developer Analyst. See D. Ct. Doc. No. 40-1, 3. Tarr's supervisor was Jeffery Matz, and Tarr worked in a group with other developer analysts. See id.

### A.

Tarr alleged that shortly after he was hired by FedEx, two co-workers – Tennant and Niedfeldt – began printing out his computer code and ridiculing his work. See id. at 7-10. Tarr also alleged that Tennant told lies about his job performance. See D. Ct. Doc. No. 3, 3. Tarr complained to Matz, but declined to report the problems to FedEx Human Resources. See D. Ct. Doc. No. 40-1, 10.

Tarr further alleged that, in July 2006, he got into an argument with Niedfeldt after she taunted him and stated that he was lucky FedEx had affirmative action. See id. at 12. Tarr e-mailed Matz to complain, and Matz responded to the complaint. See id. Matz also forwarded the e-mail exchange to his supervisor and the Human Resources Department. See D. Ct. Doc. No. 40-3, 2.

Thereafter, FedEx Human Resources employees Robertson and McArdle met with Tarr to discuss his complaints. See id. Tarr complained that Tennant and Niedfeldt were sabotaging his work, that he had quarreled with them, and that Niedfeldt

2

had made an inappropriate remark about Tarr's benefitting from affirmative action. See id. at 2-3. Robertson and McArdle then met individually with the employees involved, FedEx managers, and employees Tarr alleged had overheard the altercations. See id. at 3.

Tennant and Niedfeldt denied ridiculing Tarr's work performance or coding skills, and Niedfeldt denied making any comment regarding affirmative action. See id. Other employees explained that, during Tarr's arguments with Tennant and Niedfeldt, they never heard any comment regarding affirmative action, or anything else to suggest that Tennant and Niedfeldt harbored any ill will toward Tarr based on his race or nationality. See id.

Following the investigation, Robertson and McArdle met with Tarr and advised him that they had discovered no evidence to support his harassment claims. See id. They concluded that, although he had work-related conflicts with Tennant and Niedfeldt, there was no basis to conclude that any race- or nationality-based harassment or discrimination had occurred. See id. Tarr indicated that he did not experience any other verbal harassment after the investigation, but that unknown persons continued to sabotage his programs. See D. Ct. Doc. No. 40-1, 16. Tarr made no further complaints to the Human Resources Department.

**B.**

In October 2006, a co-worker conducted an internet search and learned that Tarr had filed a discrimination charge with the Illinois Department of Human Rights

3

("IDHR") against his prior employer, the American Dietetic Association ("ADA"). See D. Ct. Doc. No. 40-3, 4. The IDHR dismissed Tarr's charge after concluding that the ADA had terminated him for making unauthorized personal phone calls. See id. However, Tarr indicated on his application for employment with FedEx that the ADA laid him off as a result of technological change. See id. Robertson investigated the inconsistency pursuant to FedEx's Security Policy. See id. Robertson and McArdle brought the matter to Tarr's attention. See id. at 5. The next day, Tarr submitted a letter from the ADA captioned "confirmation of employment," which confirmed his dates of employment with the ADA and stated that he "performed his job responsibilities in a satisfactory manner." See id. After receiving the letter, the investigation regarding Tarr's job application was closed with no further action. See id.

## C.

In April 2006, Matz conducted Tarr's annual review. See D. Ct. Doc. No. 40-2, 2-3. Matz indicated that Tarr was performing within FedEx's "meets expectations" evaluation category, but noted some concerns about his programming skills. See id. at 2. Matz placed Tarr on an informal performance improvement plan, which required Tarr to complete training courses and then develop a program that complied with certain specifications. See id. at 3. Tarr completed the training courses, but failed to complete the required follow-up work within the prescribed time frame. See id.

4

In February 2007, Matz placed Tarr on a formal performance improvement plan because his work performance had not improved under the informal plan. See id. Tarr was instructed to write two computer programs within a specified time frame. See id. Although he submitted the programs within the allotted time, they contained errors and failed to comply with FedEx standards. See id. As a result, Matz concluded that Tarr failed to achieve the goals set out in the formal improvement plan. See id. Citing his consistently inadequate performance, FedEx terminated Tarr in April 2007. See id. at 4.

### D.

In June 2007, Tarr filed a discrimination complaint against FedEx with the Pennsylvania Human Rights Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued Tarr a right-to-sue letter in October 2008, and he filed a three-count complaint in the District Court. Tarr alleged that: (1) he was harassed by his co-workers because of his race and national origin, in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act ("PHRA"); (2) FedEx discharged him on the basis of his race and national origin, in violation of Title VII and the PHRA; and (3) FedEx unlawfully retaliated against him for engaging in activity protected by Title VII and the PHRA.

FedEx moved for summary judgment, and the District Court granted the motion. Tarr now appeals that order.

5

**II**

We have jurisdiction pursuant to 28 U.S.C. § 1291. We may affirm on any ground supported by the record. See Hughes v. Long, 242 F.3d 121, 122 n.1 (3d Cir. 2001). When reviewing a district court's grant of summary judgment, we exercise plenary review, viewing the facts in the light most favorable to the non-moving party. See Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008). We apply the same standard that governs in district court proceedings, under which "a party is entitled to summary judgment only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(c)).[1]

Tarr first argues that the District Court erred in granting summary judgment on his harassment claim. Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). A "discriminatorily hostile or abusive" work environment violates Title VII. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). To establish a hostile work environment claim, the plaintiff bears the burden of proving that: (1) he suffered

---

[1]    For convenience, and because the criteria for evaluating claims under Title VII and the PHRA are identical, see Weston v. Pennsylvania, 251 F.3d 420, 425 n.3 (3d Cir. 2001), we will refer only to Title VII in analyzing Tarr's claims.

6

intentional discrimination based on his membership in a protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected him; (4) a reasonable person in the same position and protected class would have been detrimentally affected; and (5) *respondeat superior* liability exists. See West v. Philadelphia Elec. Co., 45 F.3d 744, 753 (3d Cir. 1995). Here, the District Court reasoned that, even if Tarr could satisfy the first four criteria, he could not establish *respondeat superior* liability on the part of FedEx. We agree.

When a hostile work environment is created by an individual's co-workers, rather than his supervisors, the employer is not automatically liable. See Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009). "Rather, employer liability for co-worker harassment exists only if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action." Id. "A remedial action that stops the harassment is adequate as a matter of law." Andreoli v. Gates, 482 F.3d 641, 644 n.2 (3d Cir. 2007). Tarr conceded in his deposition that there was no harassment after FedEx investigated the harassment claim. Thus, the record supports the determination that FedEx's action was adequate as a matter of law.

Tarr counters that, although he did not suffer any additional verbal harassment, his programs continued to be sabotaged. However, there is no evidence in the record to support this claim beyond Tarr's bare assertions that any such actions were

7

committed on the basis of his race or national origin. Accordingly, summary judgment was appropriate.[2]

Second, Tarr argues that the District Court erred in granting summary judgment with regard to his discriminatory discharge claim. The District Court identified two frameworks under which a plaintiff can prevail on a discriminatory discharge claim. Under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the plaintiff bears the initial burden of demonstrating a *prima facie* case of discrimination. See id. at 802. The burden then shifts to the defendants to articulate a legitimate, non-discriminatory reason for the discharge. See id. If the defendants satisfy that burden, they will prevail unless the plaintiff demonstrates that the articulated reason was merely a pretext for discriminatory action, and not the real motivation for the discharge. See id. at 804. A plaintiff may prevail on a mixed-motive theory by showing that an adverse employment decision was based on both legitimate and illegitimate reasons. See Price Waterhouse v. Hopkins, 490 U.S. 228, 240-42 (1989). A defendant in a mixed-motive case has a limited affirmative defense if it can "demonstrate that it would have taken the same action in the

---

[2] In his complaint, Tarr also complained that FedEx continues to harass and retaliate against him by contacting his subsequent employers and convincing them to fire him. He also said that FedEx paid him less than similarly qualified employees based on his race and/or national origin. Although he addresses these assertions in his brief, it appears that they are offered in support of his other claims rather than as separate claims. He did not pursue them in the District Court in response to FedEx's summary judgment motion. Moreover, there is no evidence in the record to support these allegations. Accordingly, they do not undermine the District Court's order granting FedEx's motion.

absence of the impermissible motivating factor." Makky v. Chertoff, 541 F.3d 205, 213 (3d Cir. 2008) (internal citations and quotation marks omitted).

Tarr argued that FedEx's reliance on his allegedly poor work performance as a legitimate basis for terminating him was pretextual; he noted that he was originally assigned as a consultant and, because of his qualifications, was hired on a permanent basis only seven months into his one-year contract. We agree with the District Court that, under McDonnell Douglas, the evidence Tarr cited failed to rebut FedEx's legitimate, non-discriminatory reason for firing him: his poor work performance. Viewing Tarr's evidence in the light most favorable to him, that evidence is consistent with FedEx's defense. That is, Tarr's qualifications were initially adequate to warrant hiring him. One year into working at FedEx, however, Tarr's ability to perform his job was called into question and, after he failed to satisfy the requirements of informal and formal performance improvement plans, he was terminated. Thus, Tarr failed to demonstrate a genuine dispute as to FedEx's basis for firing him.

Tarr also appeared to argue that his job performance was poor because his co-worker mentors refused to help him because of animus based on his race and/or national origin. As the District Court concluded, however, Tarr failed to make out a *prima facie* case because he did not introduce any evidence of harassment.[3]

---

[3]    Relatedly, Tarr argued that his job performance was poor because FedEx – acting with discriminatory animus – refused to provide him a laptop with which he could work overtime from home and practice his coding skills. However, there is no evidence in the record that FedEx refused him a laptop, let alone did so with an improper motive. Indeed,

9

To the extent that Tarr sought to proceed under a mixed-motive theory, we agree with the District Court that summary judgment was appropriate. Tarr failed to introduce any evidence indicating that he was terminated based on his race or national origin. As explained above, the record evidence indicates that he was discharged based on his poor work performance alone.

Next, Tarr challenges the decision granting summary judgment on his retaliation claim. "To establish a *prima facie* case of retaliation under Title VII, a plaintiff must tender evidence that: '(1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between . . . the protected activity and the adverse employment action.'" Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995)). Tarr raised two retaliation arguments.

First, Tarr argued that FedEx investigated the inconsistency in his job application in retaliation for his complaint to Human Resources about the alleged harassment. The District Court reasoned that there was no evidence that Tarr suffered an adverse action or that the investigation was causally connected to his complaint. We need

---

the record reflects that Matz authorized Tarr to order a laptop, but that Tarr failed to do so correctly until his third attempt, shortly before he was placed on the formal improvement plan. See D. Ct. Doc. Nos. 40-1, 38; 40-2, 36. Tarr has provided no reason to conclude that he was denied a laptop for any other reason.

not reach the causation question because we agree that FedEx's investigation was not an adverse action.

To be actionable under Title VII, an employment action must be materially adverse, which means that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal citations and quotation marks omitted). As the District Court reasoned, FedEx's investigation was not adverse, let alone materially adverse. FedEx became aware of an inconsistency in Tarr's job application, which was subject to review even after his employment. Once the discrepancy was resolved, the investigation was closed and no further action related to Tarr's application was taken. There is no evidence in the record suggesting that the investigation caused Tarr any harm.

Second, Tarr argued that he was discharged in retaliation for complaining about harassment. We agree with the District Court that Tarr failed to establish a causal connection between his protected activity and his termination. In determining whether a sufficient causal link exists to survive a motion for summary judgment, courts consider "a broad array of evidence." LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007) (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 284 (3d Cir. 2000)). "Where the temporal proximity between the protected activity and the adverse action is 'unusually suggestive,' it is sufficient standing alone to create an inference of causality and defeat summary judgment." Id. If not, "we ask whether 'the proffered

11

evidence, looked at as a whole, may suffice to raise the inference.'" Id. (quoting Farrell, 206 F.3d at 280). Here, the District Court reasoned that Tarr's harassment complaint and termination, which occurred approximately nine months apart, were not so close in time as to be unusually suggestive. We agree. We also agree with the District Court that summary judgment was appropriate because Tarr failed to identify any other evidence to support an inference that he was terminated in retaliation for his complaint.

Finally, Tarr argues that the District Court erred in granting summary judgment before he could obtain numerous e-mail messages he sought from FedEx. The District Court construed his argument as a motion under Federal Rule of Civil Procedure 56(f). Rule 56(f) permits a district court to order additional discovery or take other appropriate action if a party avers that he cannot otherwise present specific facts to oppose a summary judgment motion. We review the District Court's decision to consider the summary judgment motion without ordering further discovery for abuse of discretion. See Pastore v. Bell Tel. Co. of Pennsylvania, 24 F.3d 508, 510 (3d Cir. 1994).

In order to justify relief under Rule 56(f), a party must, by affidavit, "specify 'what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained.'" Id. at 511 (quoting Dowling v. City of Philadelphia, 855 F.2d 136, 140 (3d Cir. 1988)). Tarr did not file an affidavit specifying what evidence he believed he would obtain, or how it would affect his case. Rather, he sought production of some 17,000 e-mails from FedEx, apparently

12

expecting that some of his co-workers' messages would reveal that they had treated him improperly based on his race or national origin. When the District Court ordered him to cooperate with FedEx in narrowing that search, he initially complied, but ultimately rejected FedEx's proposed solution and accused opposing counsel of being dilatory. He also threatened to file a motion to compel, but ultimately did not do so, thus undercutting his argument that further discovery was needed. Given Tarr's failure to comply with the District Court's order and the Federal Rules of Civil Procedure, we perceive no abuse of discretion in the decision to proceed to summary judgment.

We have considered Tarr's other arguments on appeal. We conclude that they lack merit and warrant no further discussion.

Accordingly, we will affirm the judgment of the District Court.