

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-4-2008

# Dee v. Borough of Dunmore

Precedential or Non-Precedential: Precedential

Docket No. 07-1720

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Dee v. Borough of Dunmore" (2008). *2008 Decisions.* Paper 18.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/18

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-1720
_____


ROBERT K. DEE, JR.,

                              Appellant

v.

BOROUGH OF DUNMORE;
BOROUGH OF DUNMORE COUNCIL;
JOSEPH LOFTUS; THOMAS HENNIGAN;
JOSEPH TALUTTO; FRANK PADULA;
LEONARD VERRASTRO; MICHAEL CUMMINGS;
all individually and in their capacity as Councilmen

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 05-cv-01342)
District Judge: Honorable A. Richard Caputo

_____

Argued March 25, 2008
Before:  McKEE, RENDELL,
and TASHIMA*, <u>Circuit Judges</u>

(Filed: December 4, 2008)

Cynthia L. Pollick, Esq.    **[ARGUED]**
The Employment Law Firm
363 Lauren Street
Pittston, PA   18640
*Counsel for Appellant*
  *Robert K. Dee, Jr.*

Karoline Mehalchick, Esq.    **[ARGUED]**
Olvier, Price & Rhodes
1212 South Abington Road
P. O. Box 240
Clarks Summit, Pa  18411
*Counsel for Appellee*
  *Borough of Dunmore;*
  *Borough of Dunmore Council;*
  *Joseph Loftus; Thomas Hennigan; Joseph Talutto;*
  *Frank Padula; Leonard Verrastro; Michael Cummings;*
  *all individually and as Councilmen*

_____

     **\*** Honorable A. Wallace Tashima, Senior Judge of the
       United States Court of Appeals for the Ninth Circuit,
       sitting by designation.

_____

OPINION OF THE COURT

_____

RENDELL, Circuit Judge.

Appellant Robert Dee, Jr. appeals from the final order of the United States District Court for the Middle District of Pennsylvania granting summary judgment in favor of Appellees the Borough of Dunmore, the Borough of Dunmore Council, and various Borough officials: Joseph Loftus, Thomas Hennigan, Joseph Talutto, Frank Padula, and Leonard Verrastro (collectively "the Borough"). In June of 2005, after approximately eighteen years of service with the Borough of Dunmore Fire Department, Dee was suspended without notice by the Borough Council based on its determination that he had failed to complete two training requirements. Days later, news

of Dee's suspension was published in the Borough's local paper.

Eight days after the suspension was initially announced, the

Borough Council held a post-suspension hearing, at which it

concluded that Dee was in fact in compliance with all applicable

training requirements.

Dee brought suit under 42 U.S.C. § 1983, alleging

violations of his First, Fifth, and Fourteenth Amendment rights

as a result of the Borough's conduct;[1] he also included several

causes of action under state law. On appeal, Dee challenges the

District Court's conclusion that his allegations were insufficient

to state a § 1983 claim against the Borough for violating his

---

[1]As recognized by the District Court, Dee's Complaint actually cited the First, *Fourth*, and Fourteenth Amendments. Because the Complaint contains no allegations involving unlawful searches and seizures, we will assume, as did the District Court, that the mention of the Fourth Amendment was in error and that Dee's intention was to cite the Fifth Amendment. We note that neither party disputed the District Court's assumption on appeal.

right to procedural due process as guaranteed by the Fourteenth Amendment. Specifically, Dee argues that the District Court erred in determining that the property and liberty interests alleged in his Complaint did not warrant constitutional protection.

We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291. For the reasons stated below, we will vacate the District Court's entry of judgment and remand for further proceedings consistent with this opinion.

## BACKGROUND

At all times relevant to his Complaint, Dee was employed as a full-time firefighter by the Borough of Dunmore Fire Department. After serving as a volunteer firefighter for approximately three years, Dee was eventually hired full time and, over a span of fifteen years, was promoted through the

5

ranks of the Department, from Lieutenant to Captain to Assistant Fire Chief. As a full-time firefighter, Dee's employment with the Borough was not "at will"; rather it was governed by the terms of the Collective Bargaining Agreement ("CBA") between the Borough and Local Union No. 860 of the International Association of Fire Fighters, AFL-CIO, of which Dee was a member.

On May 20, 2005, Joseph Loftus, the Borough Manager, requested from Frank Arnone, the Borough Fire Chief, a list of the necessary qualifications and certifications for full-time work in the Fire Department according to the CBA, along with documentation that each full-time firefighter had met these qualification. On May 23, 2005, Arnone sent Loftus a memo with the requested list and notified Loftus that all certification information was kept in the Department's personnel file. Three days later, on May 26, Loftus inquired of Arnone as to whether

all of the firefighters had completed the identified requirements and then went back to Arnone once again, seeking some additional information. After reviewing the materials he received from Arnone, Loftus determined that Dee had failed to complete two weeks of required training at the Pennsylvania State Fire Academy and did not have the required EMT Certification. Without contacting Dee, and without conducting any further investigation, Loftus conveyed this information to the Borough Council.

On June 27, 2005, relying only on the information provided by Loftus, the Borough Council voted to suspend Dee with pay pending a hearing to be held eight days later. Dee was not present at the Council's vote, nor was he even aware that his personnel file was under review. Once the decision to suspend Dee had been made, Loftus sent a letter to Arnone on June 28th, informing him of the suspension and of the scheduled hearing.

Arnone in turn informed Dee, who learned then for the first time of the charges against him. Dee was immediately removed from the schedule and prohibited from returning to work unless and until his suspension was lifted.

On June 30, 2005, after receiving a copy of Loftus's June 28th letter to Arnone, *The Times-Tribune* published a story entitled "Firefighters suspended for not completing required training."[2] (App. 164.) The article named Dee and Captain Edward Smith as the firefighters with incomplete training records. It also included, *inter alia*, a quote from Councilman Paul Nardozzo, who stated that he voted against the suspensions because he "d[id]n't think this was looked at and researched

---

[2] The parties dispute how the *The Times-Tribune* came into possession of the June 28th letter. Dee holds the Borough accountable for the release of the confidential personnel document, while the Borough states only that it came from "an unidentified and unknown" source. (Appellee's Br. 9.)

enough." (App. 164.) Five days after the article was published, on July 5, 2005, Dee filed this lawsuit.

On July 6, 2005, the Borough Council met. Dee attended the meeting, together with union counsel, who presented evidence as to the true facts. The Council then determined that Dee had in fact completed all required training, and that, under the terms of the CBA, he was not required to have the EMT certification for which he had been suspended, because the requirement only applied to those hired after a certain date. After the meeting, Dee was notified by Fire Chief Arnone that he would be permitted to return to work. On July 7, 2005, *The Times-Tribune* ran a story entitled "Dunmore firefighters reinstated." (App. 165.)

After a period of discovery in the District Court, the Borough moved for summary judgment, and the District Court granted the Borough's motion. The Court concluded, without

9

analysis, that Dee did not have a property interest cognizable under the Fourteenth Amendment, and found, after considering the elements of a liberty interest claim, that his asserted interest did not warrant constitutional protection. Having dismissed Dee's federal causes of action, the District Court declined to exercise supplemental jurisdiction over the state law claims. Dee filed a timely notice of appeal.

On appeal, Dee contends that he was denied procedural due process that should have been afforded by virtue of his asserted property and liberty interests, and that, accordingly, he was entitled to survive summary judgment.

**STANDARD OF REVIEW**

We exercise plenary review over a grant of summary judgment, viewing the facts in a light most favorable to the nonmoving party, and applying the same standard that guides

our district courts. *Erie Telecomms. Inc. v. City of Erie*, 853 F.2d 1084, 1093 (3d Cir. 1988). Under that standard, a party is entitled to summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## DISCUSSION

Originally enacted as part of the Civil Rights Act of 1871, 42 U.S.C. § 1983 provides a private right of action against anyone who, acting under the color of state law, deprives another of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see also Nextel Partners Inc. v. Kingston Twp.*, 286 F.3d 687, 693-94 (3d Cir. 2002). In this case, the right upon which Dee bases his § 1983

claim is his Fourteenth Amendment right to procedural due process.[3]

In order to determine whether the Borough's actions, as outlined above, deprived Dee of due process, "we must first ask whether the asserted individual interests are encompassed within the fourteenth amendment's protection of 'life, liberty, or property.'" *Robb v. City of Phila.*, 733 F.2d 286, 292 (3d Cir. 1984); *see also Board of Regents v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."); *Stana v. Sch. Dist. of Pittsburgh*, 775 F.2d 122, 125 (3d Cir. 1985) ("The predicate for requiring a government entity to

---

[3]Dee's Complaint also included a § 1983 claim based on an alleged violation of his First Amendment right "to be free from injury to his reputation." (App. 8.) Dee does not challenge the dismissal of this aspect of his Complaint on appeal. There is also no dispute regarding the status of Appellants as state actors.

comply with the rudiments of procedural due process is a determination that some constitutional interest is at stake."). "If protected interests are implicated, we then must decide what procedures constitute 'due process of law.'" *Robb*, 733 F.2d at 292.

As recognized above, Dee argues that he was deprived of a constitutionally protected property interest *and* a constitutionally protected liberty interest without due process as a result of the Borough's actions. We will address each of Dee's asserted interests in turn.

## I. Property Interest

Dee defines his asserted property interest as the interest "in not being suspended without just cause." (Appellant's Br. 12.) To determine whether such an interest exists, we will first look to state law. *See Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) ("Property interests are not created by the Constitution. Rather they

13

are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."); *see also Kelly v. Borough of Sayreville*, 107 F.3d 1073, 1077 (3d Cir. 1997) ("State law creates the property rights protected by the Fourteenth Amendment."); *Brown v. Trench*, 787 F.2d 167, 170 (3d Cir. 1986) ("State law determines whether . . . a property interest exists.").

A review of the civil service provisions of the Pennsylvania Borough Code reveals that, indeed, a borough fireman such as Dee may only be suspended *for cause*. 53 Pa. Stat. § 46190 specifically states that "[n]o person employed in any . . . fire force of any borough shall be suspended, removed or reduced in rank" except for one of six enumerated reasons.[4] As there is no dispute that Dee is

---

[4]Those reasons are:

> (1) Physical or mental disability affecting his
> (continued...)

14

and was at all times relevant to his Complaint a "person employed in [a] fire force of [a] borough," there can be no dispute that 53 Pa. Stat. § 46190 creates for him a property interest triggering the protections of the Fourteenth Amendment. As the Supreme Court recognized in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982), "[t]he hallmark of property . . . is an individual entitlement

---

[4](...continued)
> ability to continue in service, in which cases the person shall receive an honorable discharge from service.
> (2) Neglect or violation of any official duty.
> (3) Violation of any law which provided that such violation constitutes a misdemeanor or felony.
> (4) Inefficiency, neglect, intemperance, immorality, disobedience of orders, or conduct unbecoming an officer.
> (5) Intoxication while on duty.
> (6) Engaging or participating in conducting of any political or election campaign otherwise than to exercise his own right of suffrage.

53 Pa. Stat. § 46190.

grounded in state law, which cannot be removed except 'for cause.'" That is precisely what we have here.

 The fact that we are dealing with a suspension and not a termination is of no moment at this point in our analysis.[5] It is the Pennsylvania statute that defines the property interest, and the statute explicitly states that it applies to those "suspended, removed or reduced in rank." 53 Pa. Stat. § 46190.[6] Given the unambiguous language of 53 Pa. Stat. § 46190, which was before the District

---

[5]While an employee's interest in retaining his job may—but need not necessarily—be found to weigh more heavily than his interest in avoiding suspension in the context of a *Mathews v. Eldridge* balancing analysis (discussed below), the relative weights of the interests make them no more nor less "entitlements" worthy of basic Fourteenth Amendment protections.

[6]As we noted in a similar context in *Gniotek v. City of Phila.*, 808 F.2d 241, 243 n.5 (3d Cir. 1986), "under Pennsylvania law, suspensions, like dismissals are only proper when for just cause; therefore, appellants had a separate property interest in not being suspended."

16

Court during the summary judgment proceedings (*see* App. 181, 209-10), this is not a close call.[7] Dee has clearly demonstrated an entitlement to Fourteenth Amendment protection.

Even without 53 Pa. Stat. § 46190, however, Dee had a constitutionally protected property interest based on the terms of the CBA. "Today it is beyond dispute that a contract with a state entity can give rise to a property right protected by the Fourteenth Amendment." *Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1397 (3d Cir. 1991); *see also Stana v. Sch. Dist. of City of Pittsburgh*, 775 F.2d 122, 126 (3d Cir. 1985) (acknowledging that, while "[p]roperty interests are often expressly created by state statutes or regulations, [they] can also arise from . . . 'mutually explicit understandings' between a government employer and

---

[7]In fact, at oral argument, counsel for the Borough admitted as much, acknowledging that a state statute prohibiting the suspension of a fireman without just cause would create a constitutionally protected property interest in the same.

17

employee" (quoting *Perry v. Sindermann*, 408 U.S. 593, 601-02 (1972))). And even though "the Supreme Court has never held that *every* state contract gives rise to a property interest protected under the Fourteenth Amendment," *Unger*, 928 F.2d at 1397 (emphasis added), we have recognized that "employment contracts that contain a 'just cause' provision create a property interest in continued employment." *Wilson v. MVM, Inc.*, 475 F.3d 166, 177 (3d Cir. 2007) (internal citation omitted); *see also Unger*, 928 F.2d at 1399 (recognizing that a property interest protected under the Fourteenth Amendment arises "where the contract itself includes a provision that the state entity can terminate the contract only for cause").

Here, the CBA that governed Dee's employment with the Borough contained such a provision. Article XIV, section B of the CBA, explicitly states: "It is agreed that the Borough Council has the

18

right to discipline and/or discharge Employees for 'just cause.'"[8]

(App. 122.)   The Borough does not dispute that Dee was an "Employee" under terms of the CBA, nor does it argue on appeal that Dee's suspension did not qualify as a form of "discipline and/or discharge."   Thus, again, we reach our conclusion with relative ease.   Dee's employment contract with the Borough created a constitutionally protected property interest in not being suspended without just cause.   He was therefore entitled to due process before this interest was abridged.[9]

---

[8]The CBA also provided, at Article I, section B, that the Fire Chief and Mayor have the right "to classify, promote, suspend, discipline or discharge [Employees] with just cause." (App. 93.)

[9] Dee's situation is distinguishable from that described in *Miller v. Clinton County*, No. 07-2105, 2008 WL 4415102 (3d Cir. Oct 1, 2008).   In *Miller*, a former employee of the Clinton County probation office sought to establish a property interest in her continued employment.   We held that because the plaintiff was an at-will employee, she did not have such a property interest, citing *Elmore v. Cleary*, 399 F.3d 279 (3d Cir.

(continued...)

19

As we did above, we reject any argument that Dee lacks a property interest because suspension appears to be a less drastic form of discipline than termination. We find no legal basis for such an argument, and the Borough provides us with none. In the state employment context, an employee's property interests are "created and defined by the terms of his appointment," *Roth*, 408 U.S. at 578, and, in this case, the terms of the CBA secure for Dee an

---

[9](...continued)
2005) for the proposition that Pennsylvania law precludes local governments from employing workers as anything except at-will employees unless explicit enabling legislation to the contrary is passed by the Pennsylvania General Assembly. 2008 WL 4415102, at *7. In *Miller*, there was no such enabling legislation. Here, however, Dee is covered by the Collective Bargaining for Policemen and Firemen Act (Act 111), 43 Pa. Stat. § 217.1-10, which gives police officers and firefighters the right to collectively bargain with their public employers as to the terms and conditions of their employment. The CBA at issue here makes it clear that Dee and other Borough firefighters are not at-will employees, like the plaintiff in *Miller*. "It is agreed that the Borough Council has the right to discipline and/or discharge Employees for 'just cause.'" (App. 122.)

interest in not being "discipline[d] and/or discharge[d]" without just cause (App. 122). As the Borough has affirmatively chosen to grant Dee this entitlement, it is not for this Court to say that it is unworthy of constitutional protection.[10]

In light of the above analysis, we hold that 53 Pa. Stat. § 46190 *and* Article XIV, section B of the CBA, together and standing alone, created for Dee a constitutionally protected property interest in not being suspended without just cause. We will reverse the District Court's holding to the contrary.

---

[10]Similarly, we also eschew any notion that Dee lacks a constitutionally protected property interest because he was suspended *with pay* as opposed to without. Neither the language of 53 Pa. Stat. § 46190, nor the terms of the CBA, distinguish between the various forms that suspensions and/or discipline may take, and we find no legal authority that would permit us to create a distinction in this context.

As we stated above, however, the fact that Dee was suspended with pay may—but need not necessarily—be found to affect the *Mathews v. Eldridge* balancing analysis. *See supra* note 5.

21

Having determined that Dee did in fact have a property interest protected by the Fourteenth Amendment, we must next determine the level of process he was constitutionally due. *See Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 541 (1985) ("[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972))); *see also Robb*, 733 F.2d at 292 ("If protected interests are implicated, we then must decide what procedures constitute 'due process of law.'").

In *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), the Supreme Court held that "identification of the specific dictates of due process generally requires the consideration of three distinct factors." Those factors are:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the

22

fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.*

In this case, it is undisputed that the Borough provided Dee with neither notice nor a hearing prior to being suspended. Certainly, when an individual is not provided with any form of pre-deprivation process, as in this case, the risk of an erroneous deprivation of his constitutionally protected interest—*i.e.*, the second factor of the *Mathews* balancing—is heightened considerably. As the Supreme Court has made clear, "[w]hen protected interests are implicated, the right to some kind of prior hearing is paramount." *Roth*, 408 U.S. at 569-70; *see also id.* at 570 n.7 ("While (m)any controversies have raged . . . about the Due Process Clause, . . . it is fundamental that except in emergency situations . . . due process requires that when a State seeks to terminate (a protected) interest . . . , it must afford notice and opportunity for hearing appropriate to the nature

23

of the case before the termination becomes effective." (internal quotation marks omitted; third ellipsis added)); *Loudermill*, 470 U.S. at 542 ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)); *id.* ("We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'" (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)) (emphasis in original)); *cf. id.* at 546 ("The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement."). Only in "'extraordinary situations where some valid government interest is at stake'" is it permissible to postpone the hearing until after the deprivation has already occurred. *Roth*, 408

24

U.S. at 570 n.7 (quoting *Boddie*, 401 U.S. at 379); *see also Loudermill*, 470 U.S. at 542 n.7; *Gilbert v. Homar*, 520 U.S. 924, 930-31 (1997).

Here, the Borough argues that this was one of those extraordinary situations. According to the Borough, Dee was not provided with a pre-deprivation hearing because "Dunmore feared the potential harm of having a firefighter working for the Borough without proper certification." (Appellees' Br. at 17.) The Borough contends that its interest in protecting the safety of its citizens far outweighs Dee's interest in avoiding suspension with pay and no loss in benefits or seniority.

Dee responds that the Borough failed to provide him with a pre-deprivation hearing, not because it feared for the public safety, but because the Council feared for its own public image. In support of this contention, Dee cites the deposition testimony of Defendant Joseph Talutto, one of the Borough's council members, who

indicated that the Council acted with such immediacy, at least in part, because the members "d[id]n't want to get blasted in the press." (Appellant's Br. 5 (citing App. 403).) Dee also challenges the credibility of any suggestion that he could have possibly been considered a threat to public safety, pointing out that, as of the time of his suspension, he had served honorably with the Dunmore Fire Department for approximately eighteen years and had been promoted *by Dunmore* to the rank of Assistant Fire Chief. According to Dee, the Borough's "illusory" interest in the safety of the community (Appellant's Br. 20) cannot outweigh his constitutionally protected property interest in not being suspended without just cause.

The District Court did not reach this issue, nor did it really address the sufficiency of Dee's property interest claim in any detail. Although "a district court's failure to consider an issue below does not necessarily preclude us from addressing it on appeal," *Norfolk*

26

*Southern Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 97 (3d Cir. 2008), "where the resolution of an issue requires the exercise of discretion or fact finding . . ., it is inappropriate and unwise for an appellate court to step in," *Hudson United Bank v. LiTenda Mortgage Corp.*, 142 F.3d 151, 159 (3d Cir. 1998). The parties' arguments, as summarized above, indicate that, at the very least, there exist issues of disputed fact regarding the Borough's justification for suspending Dee without first affording him notice and a hearing. This will greatly impact the analysis of the factors to be examined under *Mathews v. Eldridge*. Accordingly, we will remand to the District Court for further proceedings.

## II. Liberty Interest

We turn next to the question of whether Dee has asserted a constitutionally cognizable liberty interest. Dee bases this aspect of his § 1983 claim on the damage to his reputation from the June 30, 2005, newspaper article, coupled with his suspension without just cause.

By now it is clear that "reputation *alone* is not an interest protected by the Due Process Clause." *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1993) (citing *Paul v. Davis*, 424 U.S. 693, 701-12 (1976)) (emphasis added). "Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) (emphasis in original); *see also Clark*, 890 F.2d at 619 ("[D]efamation is actionable under 42 U.S.C. § 1983 only if it occurs in the course of or is accompanied by a change or

28

extinguishment of a right or status guaranteed by state law or the Constitution."); *Strum v. Clark*, 835 F.2d 1009, 1012 (3d Cir. 1987) ("[M]ere damage to reputation, apart from the impairment of some additional interest previously recognized under state law, is not cognizable under the due process clause.").  This has been referred to as the "stigma-plus" test.  *See e.g.*, *Hill*, 455 F.3d at 236.

 In this case, without addressing the "stigma" prong of the analysis, the District Court concluded that Dee had not stated a sufficient "plus," as his suspension fell short of termination.  In support of this conclusion, the District Court reasoned:

> The Third Circuit Court of Appeals has, in several cases, held that the deprivation a plaintiff suffered along with stigma to his reputation was not sufficiently weighty to satisfy the "plus" requirement, because the plaintiff in each case did not lose his job, and instead complained about some adverse employment action less drastic than discharge.

(App. 7 (citing *Edwards v. Cal. Univ. of Pa.*, 156 F.3d 488 (3d Cir. 1998); *Kelly v. Borough of Sayreville*, 107 F.3d 1073 (3d Cir. 1997); *Clark*, 890 F.2d 611; *Robb*, 733 F.2d 286).)

While it is certainly true that in each of the cases cited by the District Court (1) the plaintiff had suffered "some adverse employment action less drastic than discharge" and (2) we found the challenged action to be insufficient to satisfy *Mathews*' "plus" requirement, in *none* of the cases did the action complained of implicate an "interest previously recognized under state law." *See Strum*, 835 F.2d at 1012. In this case, however, such an interest *is* implicated. As we have determined above, Dee has stated a constitutionally protected property interest—created and defined by state statutory law *and* the terms of the CBA—in not being suspended without just cause. In light of the existence of that interest, we hold that he has alleged a sufficient "plus." This is consistent with the views of our sister courts of appeals who have

held that a constitutionally protected property interest qualifies as

a sufficient "plus."[11]

---

[11]*See, e.g.*, *Greenwood v. New York*, 163 F.3d 119, 124 (2d Cir. 1998) ("Several circuits have held that the deprivation of a property interest satisfies the 'plus' prong of stigma plus. We agree with this position.  And . . . we hold that government defamation combined with the deprivation of a property interest . . . g[i]ve[s] rise to a due process liberty interest." (internal citations omitted)); *Cypress Ins. Co. v. Clark*, 144 F.3d 1435, 1436-37 (11th Cir. 1998) ("The 'stigma-plus' standard[] requires a plaintiff to show that the government official's conduct deprived the plaintiff of a previously recognized property or liberty interest in addition to damaging the plaintiff's reputation."); *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701-02 (5th Cir. 1991) ("To establish the [plus] portion of the stigma plus infringement test, a claimant must establish that the state sought to remove or significantly alter a life, liberty, or property interest recognized and protected by state law or guaranteed by one of the provisions of the Bill of Rights that has been incorporated." (internal quotation marks omitted)); *Cooper v. Dupnik*, 924 F.2d 1520, 1532 n.22 (9th Cir. 1989) ("The 'plus' part of th[e stigma-plus] test can be met by either the denial of a right specifically secured by the Bill of Rights (such as the right to free speech or counsel), or the denial of a state-created property or liberty interest such that the Fourteenth Amendment's Due Process Clause is violated.").

(continued...)

Because the District Court ended its liberty interest analysis with the conclusion that Dee had failed to satisfy the "plus" requirement, it did not address the "stigma" prong of the "stigma plus" test. "To satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statements(s) (1) were made publicly and (2) were false." *Hill*, 435 F.3d at 236 (internal citations omitted).

---

[11](...continued)

We also note that we have held—consistent with the precedent of several of our sister circuits—that when a public employee bases his "plus" on government conduct that does not implicate a state law-created property interest, the employee nonetheless satisfies the "stigma-plus" test if he can establish that he was "defamed in the course of being terminated or constructively discharged." *Hill*, 455 F.3d at 238; *accord Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1104-12 (D.C. Cir. 1985); *Dennis v. S & S Consol. Rural High Sch. Dist.*, 577 F.2d 338, 342-43 (5th Cir. 1978); *Colaizzi v. Walker*, 542 F.2d 969, 973 (7th Cir. 1976). As we have determined that a state law-created property *was* implicated in this case, termination or constructive discharge was not required.

32

We conclude that we cannot, and should not, resolve this aspect of the liberty interest analysis as there are issues of material fact that prevent us from doing so. A review of the record reveals a dispute as to the circumstances surrounding the release of the news of Dee's suspension to *The Times-Tribune*. *See supra* note 2. Such a dispute affects our ability to address the first step of the "stigma" analysis.[12] Accordingly, we will remand to the District Court for additional fact finding.

## CONCLUSION

[12]We note further that there is a dispute as to whether the Borough Council's July 6, 2005, meeting qualified as a name-clearing hearing sufficient to satisfy the requirements of due process. Should Dee be able to satisfy the "stigma" prong of the "stigma plus" test, *Mathews v. Eldridge* balancing would again be in order; this time to determine whether the Council's July 6th hearing was constitutionally sufficient. *See Graham v. City of Phila.*, 402 F.3d 139, 145-47 (3d. Cir. 2005); *see also Patterson v. City of Utica*, 370 F.3d 322, 336-37 (2d Cir. 2004).

33

For the reasons set forth above, we will VACATE the District Court's entry of judgment and REMAND for further proceedings consistent with this Opinion.