NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1972
_____

W. FLAGG PAVLIK,

Appellant

v.

INTERNATIONAL EXCESS AGENCY, INC.;
INTERNATIONAL EXCESS PROGRAM MANAGERS, INC.;
GETGUARD INSURANCE; WSIB INSURANCE AGENCY, LLC;
WILLCOMPLY, LLC
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-09-cv-00743)
District Judge:  Honorable Arthur J. Schwab
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 5, 2011

Before:  AMBRO and FISHER, *Circuit Judges*, and SÁNCHEZ,[*] *District Judge.*

(Filed: March 16, 2011)
_____

OPINION OF THE COURT
_____

[*]The Honorable Juan R. Sánchez, District Judge for the United States District
Court for the Eastern District of Pennsylvania, sitting by designation.

FISHER, *Circuit Judge*.

W. Flagg Pavlik appeals the final order of the United States District Court for the Western District of Pennsylvania granting summary judgment in favor of International Excess Agency, Inc., et al. ("IEA"). For the reasons discussed below, we will affirm.

I.

We write for the parties, who are familiar with the factual context and legal history of this appeal. Therefore, we will set forth only those facts necessary to our analysis.

In 2006, Pavlik submitted his resume to IEA. At that time, he had 39 years of experience in marketing, underwriting, production, and management in the insurance industry. IEA was an insurance provider that sought to expand into new markets. Pavlik and IEA exchanged emails that constituted "a skeleton outline of some elements of a[n employment] deal." App. at 20. However, no formal deal was reached.

Pavlik established a Pittsburgh office where he sought to develop business for IEA. In return, he received a salary of $100,000, a company credit card, and reimbursement for continuing education and home office expenses. Pavlik had no supervisor in Pittsburgh, worked from his home, set his own hours, and was responsible for acquiring new accounts for IEA using the methods that he had developed from his thirty-nine years in the insurance industry. Additionally, Pavlik received health benefits, and IEA deducted taxes from his pay check.

From January to September of 2007, Pavlik's salary and expenses totaled $96,000, while he generated only $39,000 in revenue. In April 2007, Pavlik sent an email to IEA

2

that stated that his production "suck[ed]." App. at 88. By October 2007, it became clear to both parties that production was less than expected. At the time, Pavlik blamed his poor performance on the "extremely soft market," "carrier limitations," difficulties related to starting a new office, and personnel weakness. App. at 115.

In October, Pavlik proposed that that he would accept a twenty-percent cut in his salary; IEA rejected this offer. Instead, IEA proposed that Pavlik would receive a commission in lieu of his salary, and his benefits would be terminated. Pavlik accepted IEA's new terms.

On February 22, 2008, IEA and Pavlik agreed to a new Independent Contractor Agreement (the "Agreement"). The Agreement was effective as of February 1, 2008, and formalized Pavlik's transition from employee to independent contractor. Pavlik had more than two weeks to review the document and seek legal advice prior to signing.

On May 21, 2008, IEA notified Pavlik that it intended to terminate the Agreement, and it subsequently did so.

Pavlik filed suit against IEA alleging discrimination and harassment because of his age and sex under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*., and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*. The District Court held that Pavlik was an independent contractor and was therefore ineligible for relief under Title VII or the ADEA. Pavlik filed a timely notice of appeal.

II.

The District Court had jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a grant of summary judgment. *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). We will affirm the District Court's grant of summary judgment if the record shows that there is no genuine issue as to any material fact and that the moving party was entitled to judgment as a matter of law. *Id.*

III.

The District Court concluded that Pavlik was an independent contractor subsequent to the ratification of the Agreement and, on that basis alone, granted summary judgment to IEA. Pavlik argues that the District Court erred by failing to analyze the period of time when he worked for IEA prior to the Agreement. We agree with Pavlik that the District Court should have analyzed that prior period and determined whether he was an employee, and whether he had Title VII or ADEA claims that arose during that period. However, viewing the record in the light most favorable to Pavlik, and concluding that Pavlik was an employee, summary judgment was still warranted.

Both Title VII and ADEA use the same test to determine whether an individual is an employee or an independent contractor. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-23 (1992). The term "employee" is defined in Title VII as "an individual employed by an employer." 42 U.S.C. § 2000e(f). When evaluating whether a person is an employee in a master-servant relationship for purposes of Title VII and ADEA, the

4

common law of agency applies. *Darden*, 503 U.S. at 322-24. To determine the nature of the relationship, the court should consider:

> the hiring party's right to control the manner and means by which the product is accomplished[;] . . . the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* at 323-24 (internal quotations and citations omitted).

After reviewing the record, we determine that Pavlik was an employee of IEA from October 2006 through January 2008. He received a negotiated salary and benefits package. IEA provided Pavlik with all the means to perform his job, including telephone, internet, and facsimile, and was required to make his reports to a central office where staff there finalized his work efforts. In addition, IEA required Pavlik to complete an employee application for employment. IEA issued Pavlik a W-4 form, and not a 1099 form. IEA deducted taxes from his pay check. IEA additionally stated that Pavlik was an employee in its February 14, 2008 employment termination letter, which provided, "here is the formal letter that ceases your relationship with us as the employer and you as the employee." App. at 125. Based upon these facts, we conclude that Pavlik was an employee of IEA from October 2006 through January 2008.

5

From February 2008 until the Agreement was terminated, Pavlik was an independent contractor. He signed an independent contractor agreement; he received no benefits; IEA treated him as an independent contractor for tax purposes; he was responsible for his office costs and tools; he controlled where he worked and how often he worked; and he controlled the manner and means by which he sought out new business.

Having determined that Pavlik was an employee prior through January 2008, we must decide whether the facts, in the light most favorable to Pavlik, could establish an ADEA or Title VII Claim.

ADEA claims are generally governed by the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a colorable ADEA claim, a plaintiff must show that: (1) the plaintiff was forty years of age or older, (2) the defendant took an adverse employment action against the plaintiff, (3) the plaintiff was qualified to hold the position, and (4) the plaintiff was replaced by a sufficiently younger employee. *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009). Although Pavlik was an employee prior to February 2008, he presented no evidence that he was replaced by a sufficiently younger employee. In fact, the record shows that Pavlik was not replaced at all. Thus, Pavlik failed to meet his burden of production and establish the prima facie elements of an ADEA claim. The District Court did not err in granting summary judgment for Pavlik's ADEA claim.

We now turn to Pavlik's Title VII claim. Although the District Court was correct that Title VII does not cover independent contractors, *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 179 (3d Cir. 2009), the District Court erred in concluding that Pavlik was at all times an independent contractor. By ruling that Pavlik was not an employee, the District Court avoided application of the standard for determining whether there is enough evidence to sustain a Title VII claim. However, even with that error, summary judgment was proper.

When direct evidence of gender discrimination is unavailable, an employee alleging "reverse discrimination" in a Title VII action makes out a prima facie case "by presenting sufficient evidence to allow a reasonable fact finder to conclude (given the totality of the circumstances) that the defendant treated [him] 'less favorably than others because of [his] race, color, religion, sex, or national origin.'" *Iadimarco v. Runyon*, 190 F.3d 151, 163 (3d Cir. 1999) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)). Likewise, a plaintiff alleging a hostile work environment claim under Title VII must demonstrate that he suffered pervasive and regular discrimination because of his sex. *See Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009).

Pavlik provided no direct evidence of a hostile environment created by employees of IEA or of conduct that could qualify as pervasive and regular. For example, he claims to have been called an "old turd" while the email he references merely calls him a "turd." App. at 101. This is insufficient to allege sex discrimination under Title VII. *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006) ("Title VII is not 'a general civility code for the

7

American Workplace.' Many may suffer severe or even pervasive harassment at work, but if the reason for the harassment is one that is not proscribed by Title VII, it follows that Title VII provides no relief.") (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998)), *overruled in part on other grounds by Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006).  Pavlik failed to set forth sufficient facts such that a reasonable jury could find in his favor on his Title VII claim, thereby establishing a genuine issue of fact for trial.  *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).  Accordingly, the District Court did not err by granting summary judgment in favor of IEA.

IV.

For the reasons set forth above, we will affirm the order of the District Court.