**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1638
_____

DONNA PFENDER,
                                        Appellant

v.

*SECRETARY PENNSYLVANIA DEPARTMENT OF CORRECTIONS;
RAYMOND SOBINA, Warden SCI Forest, in his individual and official capacities;
RAYMOND LAWLER, Warden, SCI Huntingdon, in his individual and official
capacities

*(Pursuant to Rule 43(c), Fed. R. App. R.)
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 4-09-cv-01838)
District Judge:  Honorable John E. Jones III
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 2, 2011
Before:  FUENTES, GREENAWAY, JR. AND GREENBERG, Circuit Judges

(Opinion filed: September 6, 2011 )
_____

OPINION
_____

PER CURIAM.

        Donna Pfender appeals the District Court's entry of summary judgment for the

defendant prison officials in this suit under 42 U.S.C. § 1983. For the reasons that follow, we will affirm.

I.

Because the parties are familiar with the background, we merely summarize for purposes of addressing the issues on appeal. The facts are largely undisputed. Pfender's common-law husband and daughter are incarcerated in Pennsylvania, and she is the president of a prisoner rights advocacy group. In 2008, Raymond Lawler, Superintendent of the State Correctional Institution ("SCI") at Huntingdon, sent a letter to Pfender advising that she was barred from visiting any SCI for an indefinite period of time. Inmate Dwayne Hill, Pfender's common-law husband, had been found in possession of a satellite photograph showing a complete aerial view of SCI-Huntingdon's layout. The photograph, which was discovered in an envelope during a search of Hill's cell, was deemed contraband because it could be used as an implement of escape. An investigation determined that Pfender was the source of the contraband, that it was mailed from her address, and that she used the name "Donna Hill" on the return address in an attempt to disguise her identity due to her affiliation with the prisoner advocacy group.

Pfender denied any connection to the contraband, and she wrote a letter to Superintendent Lawler asking for reconsideration. Superintendent Lawler reaffirmed the decision to suspend her visiting privileges. Pfender then appealed by writing a letter to Jeffrey Beard, Secretary of the Department of Corrections ("DOC"). Secretary Beard declined to reinstate Pfender's visiting privileges, concluding that the suspension was

2

appropriate and in accordance with DOC policy, citing both the threat to security that Pfender's actions posed at SCI-Huntingdon as well as a prior visiting room incident at SCI-Forest in 2007. Secretary Beard advised that Pfender could apply for reinstatement of her privileges after two years. On July 7, 2010, in response to Pfender's request, Superintendent Lawler reinstated her non-contact visiting privileges, and he advised that, if there were no further incidents, her contact visiting privileges would be reinstated automatically on January 7, 2011.

Pfender filed this pro se suit seeking damages and other relief under § 1983, arguing that the suspension of visiting privileges violated her rights to due process and equal protection. She named Beard, Lawler, and the Superintendent at SCI-Forest (Raymond Sobina) as defendants. Pfender filed a motion for partial summary judgment, which the District Court denied. Defendants moved for summary judgment after the close of discovery, and the Magistrate Judge recommended granting the motion. The Magistrate Judge determined that there is a rational basis for limiting visits when a putative visitor is reasonably thought to have supplied a prison layout diagram to an inmate, and that a legitimate interest in preventing escapes and escape attempts justifies precluding inmates from having access to aerial depictions of the prison's layout. The Magistrate Judge further concluded that Pfender was afforded adequate due process through the exchange of letters regarding the suspension, and that she was not denied equal protection because a rational basis supports the prison officials' decision.

The District Court adopted the Report and Recommendation and entered summary

3

judgment for defendants. It agreed that the due process claim must fail because defendants had a rational basis for their actions. The District Court noted that it is irrelevant whether Pfender actually sent Hill the photograph, as defendants had a reasonable basis for concluding that the photograph was sent by Pfender since it was found inside an envelope in Hill's cell bearing Pfender's identification on the return address. The District Court further determined that defendants' actions comported with the flexible due process standards that the situation demanded. With regard to equal protection, the District Court concluded that, because Pfender did not allege any suspect classification, a rational basis standard applies, and that defendants' decision to suspend visiting privileges was adequately supported. Pfender timely filed this appeal.

## II.

We have appellate jurisdiction under 28 U.S.C. § 1291. "We review an award of summary judgment *de novo*, applying the same test on review that the District Court should have applied." Burns v. Pa. Dep't of Corr., 642 F.3d 163, 170 (3d Cir. 2011) (quotation marks omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We review the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Burns, 642 F.3d at 170 (quotation marks omitted).

Pfender challenges the entry of summary judgment primarily by disputing the determination that she supplied the contraband photograph to Hill. Although the prison

4

officials investigated the matter and determined that Pfender supplied the photograph to Hill, Pfender suggests that Hill received the photograph from another source, presumably not through the mail, and that he merely chose to store the item in an old envelope that bore Pfender's name. Pfender contends that "the logical connection between [her and] the item of contraband is so remote as to render her visiting ban arbitrary or irrational." Appellant's Br. at 6.

We agree with the District Court that defendants are entitled to summary judgment. A claimed denial of procedural due process requires a plaintiff to show that a protected liberty or property interest was taken in a procedurally deficient manner. See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 570-71 (1972). Any protection for the liberty interest that Pfender might have in visiting with inmate family members must derive either from the Due Process Clause itself or from state law. See Sandin v. Conner, 515 U.S. 472, 483-84 (1995). The Due Process Clause has not been held to guarantee an interest in prison visitation. See Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (rejecting notion that "unfettered visitation is guaranteed directly by the Due Process Clause"); see also Overton v. Bazzetta, 539 U.S. 126, 131 (2003) (observing that "freedom of association is among the rights least compatible with incarceration"). In addition, Pfender has made no showing that Pennsylvania law creates a protected liberty interest in visiting privileges.

Assuming some protection for Pfender's right of association, such a right is necessarily circumscribed by the need to afford deference to prison officials in the

exercise of their professional judgment when pursuing legitimate penological interests.

See Overton, 539 U.S. 126, 131-32 (concluding that the Court "need not attempt to explore or define the asserted right of association at any length or determine the extent to which it survives incarceration because the challenged regulations bear a rational relation to legitimate penological interests"); see also Wirsching v. Colorado, 360 F.3d 1191, 1198 (10th Cir. 2004) (explaining that while "courts and commentators have observed that visitation may significantly benefit both the prisoner and his family … the Constitution allows prison officials to impose reasonable restrictions upon visitation").

The suspension imposed upon Pfender was "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). Superintendent Lawler explained that, after an investigation, it was determined that Pfender had supplied Hill with an aerial photograph of the prison's layout. The photograph was undeniably an item of contraband because an inmate could use it to plot an escape. Pfender's visiting privileges were suspended in accordance with DOC regulations,[1] and she was afforded an opportunity to seek reinstatement after two years. We agree with the District Court that there is a rational basis for imposing this type of limitation upon the visiting privileges of an individual who is determined to have supplied an inmate with a prison layout

---

[1] See, e.g., Pa. DC-ADM 812.VI.A.2.i ("Any visitor's privileges may be limited, suspended, or restricted (such as non-contact visits only or a restriction on visiting at more than one facility) if information becomes available suggesting that allowing the individual to visit poses a threat to the safety and security of any Department facility."); Pa. DC-ADM 812.VI.K.8 ("A visitor who is suspended or barred at one facility shall not be permitted to visit at any other facility.").

photograph. Prison officials have a legitimate penological interest in preventing inmates from possessing items that can be used to escape, see, e.g., United States ex rel. Tyrrell v. Speaker, 535 F.2d 823, 827 n.5 (3d Cir. 1976), and in restricting the visiting privileges of individuals determined to pose a security risk by providing such items to an inmate.[2]

Pfender denies having provided the photograph to Hill, but she has not pointed to a "material" factual dispute that would preclude an entry of summary judgment. "A disputed fact is 'material' if it would affect the outcome of the suit as determined by the substantive law." J.S. v. Blue Mt. Sch. Dist., -- F.3d --, 2011 U.S. App. LEXIS 11947, at *17 (3d Cir. June 13, 2011) (en banc) (quotation marks omitted). The contraband in Hill's cell was discovered in an envelope that identified Pfender on the return address. While Pfender proffers alternative explanations for how Hill might have obtained the photograph, the evidence cited by the prison officials provides a reasonable basis for their conclusion that Pfender supplied the contraband. We have explained, in conducting a Turner analysis at the summary judgment stage, that merely "show[ing] there are different views as to the relevant issues and underlying facts" is insufficient. Williams v. Morton, 343 F.3d 212, 218 (3d Cir. 2003). Pfender's denial of culpability does not create a triable issue on the question whether the suspension of her visiting privileges bears a

---

[2] As the Pennsylvania Commonwealth Court concluded in denying Pfender's mandamus petition challenging the suspension of her visiting privileges, "Pfender is hard-pressed to assert a constitutional right to associate with incarcerated persons when respondents' internal investigation has revealed that she is a security risk." Pfender v. Pa. Dep't of Corr., 2009 Pa. Commw. Unpub. LEXIS 754, at *7 (Pa. Commw. Ct. Sept. 23, 2009) (unreported memorandum opinion).

rational relationship to legitimate penological interests. On that substantive question, summary judgment was properly entered for defendants.[3]

Finally, Pfender argues that suspension of her visiting privileges violated equal protection because there was some unspecified "gender disparity in the [prison officials]' visiting ban practice," and the suspension amounted to "arbitrary and irrational government conduct." Appellant's Br. at 9-10. "To prevail on an equal protection claim, a plaintiff must present evidence that s/he has been treated differently from persons who are similarly situated." Williams, 343 F.3d at 221. Pfender has presented no such evidence. Moreover, as the District Court explained, Pfender's equal protection claim fails for the same reason that her due process claim fails: the suspension of her visiting privileges was reasonably related to a legitimate penological interest. See, e.g., id. ("Turner is equally applicable to Prisoners' equal protection claims.").

---

[3] Alternatively, we agree with the District Court that Pfender was provided all the process that she might have been due under the circumstances. Pfender argues that she was entitled to more formal process under Pennsylvania administrative agency law, but this argument finds no support in her brief or in the record before this Court. In addition, as the Commonwealth Court found, "Pfender has not set forth any Department regulation or policy that otherwise entitles her to an administrative hearing upon the removal of her visiting privileges." Pfender , 2009 Pa. Commw. Unpub. LEXIS 754, at *8. To the extent that Pfender also challenges the District Court's analysis by suggesting that it was inconsistent with the alleged damage to her reputation, we agree with defendants that this assertion is insufficient to trigger due process protection on the record presented here. See Dee v. Borough of Dunmore, 549 F.3d 225, 233 (3d Cir. 2008) ("By now it is clear that reputation *alone* is not an interest protected by the Due Process Clause.") (quotation marks omitted).

### III.

We have considered Pfender's remaining arguments but find them without merit.

For the foregoing reasons, we will affirm the District Court's judgment.[4]

---

[4] Given our disposition, we do not reach the prison officials' alternative argument that they are entitled judgment on the basis of qualified immunity.