**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3115
_____

JOHN SARANCHUK; JAMIE SARANCHUK; JOHN R. MACIOLEK; TAMMY
MACIOLEK; JASON KWIATKOWSKI; AMY KWIATKOWSKI;
CHARLES YARICK,
Appellants

v.

DAN LELLO, individually in his personal capacity and as Mayor of the Borough of
Dupont; STANLEY KNICK, Jr., individually in his personal capacity and as President of
the Council of the Borough of Dupont; MARK KOWALCZYK, individually in his
personal capacity, as Vice Chairperson of the Council of Dupont Borough and as head of
the Police Commission; JOSEPHINE HANSEN, individually in her personal capacity
and as a member of the Police Commission and Council of the Borough of Dupont;
BERNARD ZIELINSKI, individually in his personal capacity and as a member of the
Council of Dupont Borough; SEAN MURRAY, individually in his personal capacity and
as Chief of Police of the Borough of Dupont; BOROUGH OF DUPONT, Luzerne
County, Pennsylvania
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-15-cv-00893)
District Judge: Hon. Malachy E. Mannion
_____

Argued June 11, 2019

Before: HARDIMAN, KRAUSE, and PORTER, *Circuit Judges*.

(Filed: July 19, 2019)

Andrew J. Katsock, III    [ARGUED]
15 Sunrise Drive
Wilkes-Barre, PA 18705

　　Attorney for Appellants


David J. MacMain    [ARGUED]
Laurie A. Fiore
MACMAIN LAW GROUP LLC
433 West Market Street, Suite 200
West Chester, PA 19382

　　Attorneys for Appellees

_____

OPINION[*]
_____


PORTER, *Circuit Judge*.

Appellants are four police officers who worked for the Borough of Dupont, Pennsylvania. They contend that, because they were members of the local police union, the Borough either terminated their employments or severely cut their hours. And this retaliation, they say, violated their property interests under the union's collective bargaining agreement with the Borough and the Due Process Clause of the Fourteenth Amendment. The District Court held that the Borough did not violate the officers' procedural due process rights because the officers did not have constitutionally protected property interests in their continued employment. We disagree. We will affirm in part,

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

reverse in part, and vacate in part the District Court's decision and remand for further consideration.

I[1]

John Saranchuk, John Maciolek, Jason Kwiatkowski, and Charles Yarick were police officers with the Borough of Dupont, Pennsylvania. Each of them was a member or officer of the Dupont Borough Police Officers' Association ("Union"). The Union negotiated a collective bargaining agreement ("CBA") with the Borough that was effective from January 1, 2013 through December 31, 2016.

The Borough paid the officers by the hour and did not guarantee the officers any number of work hours per week. None of the officers had employment contracts with the Borough. Instead, their shifts were determined on a month-to-month basis by the Officer in Charge, who, from early 2011 to August 2014, was Saranchuk. In general, the Officer in Charge had absolute discretion to set the monthly schedule, prorating hours among officers roughly by availability, seniority, and competency.

In August 2014, the Borough appointed Sean Murray to be the new Officer in Charge of the Borough police department, replacing Saranchuk. Saranchuk was told not to come back to work until further notice. A few days later, Saranchuk received notice from the Borough Council to attend a "meeting … regarding a Luzerne County District

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have appellate jurisdiction under 28 U.S.C. § 1291. We exercise de novo review over the District Court's grant of summary judgment, "viewing the facts in a light most favorable to the nonmoving party, and applying the same standard that guides our district courts." *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008).

3

Attorney's detective investigation." Supp. App. 251. That meeting—which the Borough called a "Loudermill hearing"—was rescheduled twice. Supp. App. 250–52. When Saranchuk finally met with the Borough, he was told that the hearing had to be rescheduled yet again and that he would be provided with written accusations against him. He alleges that his employment was terminated shortly after that, without a hearing, because of his association with the Union. The Borough contends that Saranchuk was terminated for misconduct.

The other officers allege that the Borough similarly retaliated against them. Maciolek asserts that his hours were cut within a few weeks of Murray's appointment and that he was terminated shortly thereafter. Kwiatkowski says that his hours were reduced significantly, starting around October 2014, until he was "[e]ffectively" terminated in May 2015. Supp. App. 527. And Yarick contends that his hours were repeatedly cut by the Borough and eventually reduced to zero in early 2016. For its part, the Borough says that Maciolek and Kwiatkowski were not actually terminated; they were simply not scheduled for shifts because they were unresponsive or incompetent.

The officers sued the Borough, the Borough Council's members, the Borough's mayor, and Sean Murray in May 2015, asserting a dozen claims under 42 U.S.C. § 1983, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), and state common law.[2] In particular, the officers alleged that the Borough violated their procedural due process rights under the Fourteenth Amendment by terminating their

_____

[2] We refer to the various defendants-appellees collectively as simply the "Borough."

4

employments or significantly cutting their hours with no associated process. After some

discovery, the Borough moved for summary judgment.

Ultimately, the District Court rejected all the officers' claims. As relevant here, the

District Court found that the Borough did not violate the officers' procedural due process

rights because, under the CBA, the officers had no constitutionally protected property

interest in their continued employments. And, given that lack of a property interest, the

Court declined to "undertake an inquiry into the adequacy of the procedures that were

provided to the plaintiffs." App. 22. The officers[3] timely appealed.[4]

II

Our procedural due process analysis proceeds in two steps. First, we determine

whether the officers had a constitutionally protected property interest in their continued

employment. *See Wilson v. MVM, Inc.*, 475 F.3d 166, 177 (3d Cir. 2007). If the answer is

yes, "we then must decide what procedures constitute 'due process of law'" and whether

---

[3] The notice of appeal also names three of the officers' spouses as Appellants. App. 1. But the spouses do not challenge the District Court's decisions on any of their state-law claims. And the spouses have never asserted that they have constitutionally protected property interests at issue here or that the Borough violated their due process rights. So even though the spouses are putative appellants, they have no claims at issue in this appeal.

[4] The officers purported to appeal the District Court's decision only as it related to four of their twelve claims. At oral argument, the officers' counsel conceded that they contest the District Court's judgment only on their procedural due process and *Monell* claims. So we address only those claims in this opinion. (The officers' other two claims are meritless anyway. Their substantive due process claim fails for lack of a fundamental, constitutionally protected property interest. *See Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139–41 (3d Cir. 2000). And their civil rights conspiracy claim fails because they cannot show any evidence of "invidious" discrimination. *See Farber v. City of Patterson*, 440 F.3d 131, 134, 143 (3d Cir. 2006).)

the officers received such procedures. *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008) (internal quotation marks and citation omitted).

Employees like the officers do not automatically have protected property interests in their jobs. That is, they "must have a legitimate entitlement to [their] continued employment," and not merely a "unilateral expectation." *Wilson*, 475 F.3d at 177 (internal quotation marks and citation omitted). Whether the officers had such an entitlement turns on state law—here, Pennsylvania. *See Kelly v. Borough of Sayreville*, 107 F.3d 1073, 1077 (3d Cir. 1997) ("State law creates the property rights protected by the Fourteenth Amendment."). And because the officers disclaimed at oral argument any reliance on Pennsylvania statutes,[5] their only resort is to the CBA. *See Pipkin v. Pa. State Police*, 693 A.2d 190, 192 (Pa. 1997) ("A governmental employee only has a personal or property right in his employment where he can establish a legitimate expectation of continued employment through either a contract or a statute.").

Article 19, Section 1 of the CBA provides:

> No full-time Police Officer or regular part-time Police Officer covered by this Agreement shall be discharged, suspended or demoted, or otherwise disciplined, except for just cause, and

---

[5] The officers asserted in supplemental briefing that they also had constitutionally protected property rights to their continued employments under the Pennsylvania Borough Code and the Police Tenure Act. Appellant's Supp. Letter Br. 2–3 (citing 53 Pa. Stat. §§ 811, 812; 8 Pa. Cons. Stat. § 1101). They expressly waived this contention at oral argument, so we take no position on it here. We note, however, that whether the officers would otherwise count as members of a "police force," or whether they would be excepted from that definition because they are "[e]xtra police serving from time or time or on an hourly or daily basis," 8 Pa. Cons. Stat. § 1170(4), is an open question. The Pennsylvania Supreme Court has granted a petition for certification on this issue in *DeForte v. Borough of Worthington*, 189 A.3d 390 (Pa. 2018) (table).

the Borough shall state the reason for just cause, in writing, at the same time such action is taken.

Supp. App. 778. Under our precedent, this provision creates a constitutionally protected property interest in the officers' continued employments. *Wilson*, 475 F.3d at 177 ("In the governmental context, … employment contracts that contain a 'just cause' provision create a property interest in continued employment." (citing *Kelly*, 107 F.3d at 1077) (other citation omitted)); *Dee*, 549 F.3d at 231; *Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1399 (3d Cir. 1991) (explaining that a constitutionally protected "property interest arises where the contract itself includes a provision that the state entity can terminate the contract only for cause"). Put simply, the CBA guaranteed that the Borough could not "discharge[], suspend[] or demote[], or otherwise discipline[]" the officers without "just cause." Supp. App. 778. That guarantee is sufficient to confer a constitutionally protected property interest.

Yet the contours of that interest are hazy. The Borough regularly emphasized to the officers that they were not guaranteed any hours of work. And the CBA nowhere guarantees hours either. So although the officers had an interest not to be "discharged, suspended or demoted, or otherwise disciplined" without "just cause," it is unclear whether a reduction in not-guaranteed hours would impinge on that interest.

On remand, the District Court should take three steps. First, it should determine whether, in view of the officers' variable month-to-month schedules, the officers' reduction in hours was a form of "discipline," or was dramatic enough to constitute a "demotion," "suspension," or constructive "discharge." Supp. App. 778; *see Ferraro v.*

7

*City of Long Branch*, 23 F.3d 803, 806–07 (3d Cir. 1994) (recognizing that "constructive discharge" may constitute a deprivation of a protected property interest). If so, the Court should next decide whether "extraordinary circumstances" rendered pre-deprivation process infeasible. *Schmidt v. Creedon*, 639 F.3d 587, 597 (3d Cir. 2011); *see Dee*, 549 F.3d at 233. And lastly, if an officer suffered only "discipline" or "demotion" under the CBA, the Court should decide whether these adverse actions even trigger the Due Process Clause's protections as a matter of federal constitutional law. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005); *see also, e.g.*, *Perez v. Cucci*, 725 F. Supp. 209, 243 (D.N.J. 1989) (finding property interest in not being demoted), *aff'd mem.*, 898 F.2d 142 (3d Cir. 1990).

The Borough contends that "[n]o [p]rotections [a]ttach to [the officers] [u]nder Article 19, Section 1" because the officers "waived their right[s] to proceed" under that section by failing to complete the formal grievance process under the CBA.[6] Appellees' Supp. Letter Br. 9–10. Put differently, the Borough thinks that because the officers did not seek to validate their interests through arbitration under the CBA, they never had any protected property interests in the first place. But this conflates the two parts of our procedural due process analysis. First we examine whether a property interest exists; only after answering that question do we turn to whether grievance procedures (if any) were adequate or availed. *Dee*, 549 F.3d at 229. Our answer at the first step is not contingent

---

[6] Article 19, Section 2 provides that "whether 'JUST CAUSE' exists" under Section 1 "shall be subject to the grievance/arbitration procedure" in Article 17. Supp. App. 778.

on whether, at the second step, the plaintiffs adequately pursued available procedures. In short, whether the officers arbitrated their claims says nothing about whether the officers had a property interest entitling them to pre-deprivation process.

The Borough's waiver argument is incorrect anyway. The grievance procedure under the CBA is designed to sort out "whether 'JUST CAUSE' exist[ed]" for the Borough to take adverse employment action against an officer only after the fact. Supp. App. 777–78. Yet, "absent extraordinary circumstances, due process requires notice and a hearing prior to suspension without pay, even where union grievance procedures, after the fact, fully compensate erroneously suspended employees." *Schmidt*, 639 F.3d at 597; *see Dee*, 549 F.3d at 233 ("Only in extraordinary situations where some valid government interest is at stake is it permissible to postpone the hearing until after the deprivation has already occurred." (internal quotation marks and citations omitted)).

Ordinarily, our next steps would be to determine whether the Borough in fact infringed on the officers' protected interests, and, if so, whether the officers received sufficient pre-deprivation process under the Fourteenth Amendment. *See, e.g.*, *Dee*, 549 F.3d at 232–33; *Wilson*, 475 F.3d at 178–79. But because the District Court stopped at step one, and given the remaining factual disputes in the record, we decline to take these next steps here. *See Dee*, 549 F.3d at 233. Instead, we will simply reverse the District Court's initial determination that the officers lacked a constitutionally protected property interest under the CBA and remand for consideration of the remaining Procedural Due Process analysis consistent with this opinion.

9

To be clear, we take no position on whether the officers other than Saranchuk were in fact "discharged, suspended or demoted, or otherwise disciplined" under Article 19. Supp. App. 778. Nor do we express an opinion on whether, assuming the officers' property interests were derogated, the Borough afforded the officers sufficient due process. The District Court is better suited to answer these questions in the first instance on remand. And any conclusions by the fact-finder will inform the District Court's legal determination of what process each officer may have been due. *See Midnight Sessions, Ltd. v. City of Phila.*, 945 F.2d 667, 682–84 (3d Cir. 1991), *abrogated on other grounds by United Artists Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 400–01 (3d Cir. 2003).

Finally, because the officers' *Monell* claim may rise or fall with their procedural due process claim under § 1983, we take no position on it here. We will vacate the District Court's decision on that claim and remand it as well.

\* \* \* \* \*

For these reasons, we will affirm the District Court's decision on the officers' substantive due process and conspiracy claims. We will reverse the District Court's initial determination that the officers had no constitutionally protected property interest under the CBA. And we will vacate the District Court's decision on the officers' *Monell* claim. We will remand the officers' procedural due process and *Monell* claims to the District Court for further consideration consistent with this opinion.