NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 15-1829

———————————

HARLAND CLARKE HOLDINGS CORP.;
SCANTRON CORPORATION
Appellants

v.

MICHAEL MILKEN; KALYANARAMAN SRINIVASAN;
KNOWLEDGE UNIVERSE EDUCATION, LP; KNOWLEDGE
UNIVERSE EDUCATION HOLDING, INC.

———————————

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civ. No. 1-14-cv-00138)
District Judge:  Honorable Gregory M. Sleet

———————————

Submitted under Third Circuit LAR 34.1(a)
on December 8, 2015

Before: FUENTES, SHWARTZ, and VAN ANTWERPEN, Circuit Judges

(Filed: April 5, 2016)

———————————

OPINION[*]

———————————

———————————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

FUENTES, Circuit Judge.

Plaintiffs Harland Clarke Holdings Corporation and Scantron Corporation allege that defendant Michael Milken made misrepresentations when negotiating the sale of a company to Scantron. The District Court ruled that Milken, who was not a party to the sales transaction or the supporting contracts, was a "Non-Recourse Party" under the terms of the applicable guarantee agreement and therefore immune from suit. Because this interpretation was correct, we will affirm the judgment.

I.

Plaintiff Scantron is a wholly owned subsidiary of Harland Clarke. In 2010, Scantron purchased a company called GlobalScholar from an entity called KUE Digital for approximately $135 million. The sale was effectuated by a Securities Purchase Agreement (the "Purchase Agreement") between Scantron and KUE Digital. Although Milken was allegedly involved in negotiating the sale, he was not a party to the Purchase Agreement. Rather, he approached the deal from several layers of remove: Milken is an officer and equity holder of KUE Management Inc., which is the general partner of KUE LP, which is in turn an affiliate of KUE Digital.

The Purchase Agreement was supported by four limited guarantee agreements between Scantron and KUE Digital's equity holders. Under the agreements, each equity holder, including KUE LP, guaranteed the performance of KUE Digital's payment and indemnification obligations under the Purchase Agreement. The guarantees set certain "Caps" on each guarantor's potential liability. For example, the agreed "Cap" for KUE LP

2

was 83.9% of the purchase price.[1] The guarantee agreements also identified certain parties as "Non-Recourse Parties" against whom Scantron generally "has no remedy, recourse or right of recovery . . . ."[2] Paragraph 6(b) of each agreement specified that neither Scantron nor its affiliates could bring any suit relating to the GlobalScholar transaction against any Non-Recourse Party.[3] Milken was not a guarantor and did not sign any of the guarantee agreements.

The transaction closed in January 2011. Two and a half years later, in June 2013, Plaintiffs filed suit in Texas state court, alleging, *inter alia*, that Milken made misrepresentations during the 2010 negotiations that fraudulently induced Scantron to purchase GlobalScholar. The lawsuit was removed to federal court and then transferred to the District of Delaware pursuant to forum-selection clauses in the transaction agreements.[4] In March 2015, the Delaware District Court granted Milken's motion for summary judgment, concluding that Plaintiffs' suit was barred because Milken was "plainly" a Non-Recourse Party under the terms of KUE LP's guarantee agreement (the "Guarantee").[5] Plaintiffs now appeal that ruling.[6]

---

[1] J.A. 176.

[2] *Id*. at 178.

[3] *See*, *e.g.*, *id*.

[4] *Id*. at 4.

[5] *Id*. at 38-39. Plaintiffs' claims against defendants Kalyanaraman Srinivasan, KUE LP, and KUE Holding, Inc. have been dismissed and are not on appeal here.

[6] The District Court held in the alternative that the disclaimers in the Purchase Agreement constituted an anti-reliance clause that bars Plaintiffs' fraud claim against Milken. Because we conclude that Milken was a Non-Recourse Party and immune from suite, we do not reach this alternative ruling.

We must decide whether, under Delaware law, Milken qualifies as a Non-Recourse Party under the terms of the Guarantee. Plaintiffs do not dispute that if Milken qualifies as a Non-Recourse Party, Paragraph 6(b) of the Guarantee bars their claims.[8]

Paragraph 6(a) of the Guarantee defines Non-Recourse Parties as follows:

---

[7] The District Court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291. The parties agree that Delaware law governs interpretation of the Guarantee. We review the District Court's summary judgment ruling and its interpretation of a contract de novo. *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008) (summary judgment); *United States v. Hardwick*, 544 F.3d 565, 570 (3d Cir. 2008) (contract interpretation).

[8] Paragraph 6(b) of the Guarantee states that:

> The Guaranteed Party [Scantron] hereby covenants and agrees that it shall not institute, and shall cause each of its Affiliates [including Harland Clarke] and representatives not to institute, directly or indirectly, any Action arising under, or in connection with, this Guarantee, the Purchase Agreement or the transactions contemplated thereby against the Guarantor or any Non-Recourse Party except for
>
> > (i) claims by the Guaranteed Party against the Guarantor under and in accordance with this Guarantee,
> >
> > (ii) claims by the Guaranteed Party against Seller [KUE Digital] under and in accordance with the Purchase Agreement, or
> >
> > (iii) claims under and in accordance with the Restrictive Covenant Agreement.
>
> Recourse against the Guarantor and/or the Seller in accordance with Actions permitted by clauses (i) through (iii) immediately above shall be the sole and exclusive remedy of the Guaranteed Party and all of its Affiliates against the Guarantor or any Non-Recourse Party in respect of any liabilities or obligations arising under, or in connection with, the Purchase Agreement or any of the other agreements contemplated thereby, or the transactions contemplated thereby, and such recourse shall be subject to the limitations described herein and therein.

J.A. 179.

[T]he Guaranteed Party [Scantron] agrees and acknowledges that no Person other than the Guarantor [KUE LP] has any obligations under this Guarantee and that, notwithstanding that the Guarantor is a limited partnership, the Guaranteed Party [Scantron] has no remedy, recourse or right of recovery against, or contribution from, **in each case, with respect to this Guarantee**

(i) any former, current or future general or limited partners, stockholders, holders of any equity, partnership or limited liability company interest, officer, member, manager, director, employees, agents, controlling Persons, assignee or any Affiliates of the Guarantor [KUE LP] (other than Seller), or

(ii) any former, current or future general or limited partners, stockholders, holders of any equity, partnership or limited liability company interest, officer, member, manager, director, employees, agents, attorneys, controlling Persons, assignee or Affiliates (other than Guarantor) of any of the foregoing

(those Persons and entities described in the foregoing clauses (i) and (ii) being referred to herein collectively as "Non-Recourse Parties") . . . .[9]

Plaintiffs concede that "Milken is an Affiliate of the Guarantor."[10] They nonetheless argue that Milken is not a Non-Recourse Party because the bolded phrase "in each case, with respect to this Guarantee" modifies and limits the definition of Non-Recourse Party to claims brought "with respect to" the Guarantee. Under this reading, a party can only be a Non-Recourse Party in the context of a suit brought under the Guarantee; if the suit is not predicated on a breach of the Guarantee, a person who technically falls within clauses (i) or (ii) of Paragraph 6(a) still does not qualify as a Non-Recourse Party. According to

---

[9] *Id.* at 178 (emphasis and paragraph breaks added).

[10] Pls.' Br. 8.

Plaintiffs, "[t]he Guarantee bars suit against Milken only for claims with respect to [the Guarantee], which the fraud claims at issue here are not."[11]

This argument disregards the structure and plain language of Paragraph 6(a). That paragraph contains two relevant provisions: a standalone definition of the term "Non-Recourse Parties," and a substantive disclaimer of remedies against Non-Recourse Parties. Paragraph 6(a) defines "Non-Recourse Parties" as the "Persons and entities described in . . . clauses (i) and (ii)."[12] The definition is plain as can be: the term "Non-Recourse Parties" means the people listed *inside* clauses (i) or (ii). By contrast, the phrase "in each case, with respect to this Guarantee" sits *outside* clauses (i) and (ii) and modifies only the preceding clause, in which Scantron disclaims any "remedy, recourse or right of recovery against, or contribution from" Non-Recourse Parties. The phrase "in each case" tells us that Scantron has disclaimed each of the listed forms of relief—be it a "remedy," a "recourse," a "right of recovery," or a "right of contribution"—"with respect to" the Guarantee. And as Plaintiffs admit, Paragraph 6(b) moves beyond disclaiming relief solely "with respect to th[e] Guarantee" and prohibits all claims against Non-Recourse Parties in connection with the sale. Plaintiffs' suggestion that we merge the modifying phrase "in each case, with respect to this Guarantee" into the standalone definition of "Non-Recourse

---

[11] *Id*. 6.

[12] J.A. 178.

Parties" would blur these distinctions and require us to "destroy or twist [contract] language under the guise of construing it"[13]—something that Delaware law forbids.

Plaintiffs resist the plain reading of Paragraph 6(a) by claiming that their interpretation eliminates the redundancy of having a partial preclusion of claims "with respect to th[e] Guarantee" in Paragraph 6(a) and a complete preclusion of all claims "in connection with" the sale in Paragraph 6(b).[14] But Paragraphs 6(a) and 6(b) serve discrete and complementary functions. Paragraph 6(a) shields Non-Recourse Parties from "secondary liability" claims by preventing plaintiffs from seeking remedies "through the Guarantor, Seller or otherwise, whether by or through attempted piercing of the corporate veil or similar action."[15] Paragraph 6(b) shields Non-Recourse Parties from direct claims arising from the Non-Recourse Party's breach of its own duties or obligations. The mere fact that there is some overlap in coverage between these two complementary provisions does not require us to jerry-rig an artificial "solution" that would distort the plain meaning and purpose of the definition set forth in Paragraph 6(a).

Plaintiffs' proposed reading would also introduce, rather than resolve, inconsistencies between the two provisions. Paragraph 6(b) prohibits the filing of any suit "arising under, or in connection with, this Guarantee, the Purchase Agreement or the

---

[13] *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992).

[14] *See* J.A. 178-79.

[15] *Id*. at 178.

7

transactions contemplated thereby against . . . any Non-Recourse Party."[16] If, as Plaintiffs contend, Paragraph 6(a) defines Non-Recourse Parties as parties sued under the Guarantee and shields them from such suits, then it would be entirely superfluous for Paragraph 6(b) to also prohibit suits against such persons "arising under, or in connection with, this Guarantee." Likewise, the prohibition on claims arising outside of the Guarantee—i.e., the prohibition on claims related to "the Purchase Agreement or the transactions contemplated thereby"—would be meaningless if a Non-Recourse Party is, by definition, someone who has only been sued under the Guarantee. Plaintiffs' interpretation would render Paragraph 6(b)'s categorical protection of Non-Recourse Parties "illusory or meaningless" and must be rejected.[17]

Accordingly, the plain language and the structure of the Guarantee dictate that Milken is a "Non-Recourse Party" under Paragraph 6(a) and therefore immune from this suit.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[16] *Id*. at 179.

[17] *O'Brien v. Progressive N. Ins. Co*., 785 A.2d 281, 287 (Del. 2001).

8