NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1104
_____

PAUL KAHAN,
                    Appellant

v.

SLIPPERY ROCK UNIVERSITY OF PENNSYLVANIA;
*EVA TSUQUIASHI-DADDESIO; JOHN CRAIG;
CHARLENE WINSLOW; THOMAS WINSLOW, SR.;
THOMAS WINSLOW, JR.

*(Amended per the Court's Opinion dated 11/8/16)
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-12-cv-00407)
District Judge: Honorable Joy Flowers Conti
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 30, 2015

Before: GREENAWAY, JR., SCIRICA, and ROTH, Circuit Judges

(Filed: November 8, 2016)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Paul Kahan appeals the District Court's grant of summary judgment dismissing his employment discrimination claim and other related claims against his former employer, Slippery Rock University of Pennsylvania ("SRU"), and several individual defendants. For the reasons detailed below, we will affirm.

**I.**

Kahan was hired to be an Assistant Professor in SRU's Department of History in February 2009 on a probationary one-year teaching contract. The contract was subject to renewal based on evaluations and recommendations by the history department's evaluation committee; the history department's chairman, John Craig; the dean of the college of humanities, Eva Tsuquiashi-Daddesio;[1] and the president of SRU, Dr. Robert M. Smith. Kahan was entitled to written notice regarding the renewal of his contract by April 1, 2010.

Kahan began teaching in August 2009, and his performance was inconsistent. He was late to submit his mid-term grades for the fall 2009 semester. He failed to attend a mandatory faculty meeting on January 26. He also clashed with the secretary for SRU's Department of History, Charlene Winslow, who testified in a deposition that she had an unfavorable opinion of Kahan because she thought he was "weird" and "disingenuous." App. 556. Winslow's son, Tommy, was a student in Kahan's class, and in December

---

[1] The complaint and District Court docket list appellee as "Eva Tsuquiashi-Daddessio." It appears the proper spelling is "Eva Tsuquiashi-Daddesio" (with just one *s* in "Daddesio"). The clerk is directed to correct the spelling of appellee's name in the caption and as a party.

2

2009, Kahan refused to give him an extension on a final report for the class, even though Tommy had an attention deficit disorder. Ms. Winslow sought to file a complaint with SRU based on this refusal, at which point Kahan relented and granted a one-week extension. Kahan also allegedly asked Tommy Winslow in class, while Winslow was staring out the window, whether he was looking at a good-looking man, adding that he did not "mean that in a sexual way." Kahan denies making this comment.

Despite these inconsistencies, Kahan's superiors were prepared to renew his contract as the April 1 deadline approached. In February 2010, both the history department evaluation committee and the department chair, Craig, gave favorable reviews to Kahan and recommended renewal of his contract. And on March 2, 2010, Dean Tsuquiashi-Daddesio sent a letter to Kahan indicating she would recommend renewal of his contract.

But three days later Kahan's situation changed. SRU's academic records office sent a memorandum to Dean Tsuquiashi-Daddesio notifying her Kahan had failed to submit spring semester mid-term grades on time, the second time he had missed such a deadline. She spoke with Craig, who informed her that he no longer supported renewing Kahan's contract. She similarly decided she no longer supported renewing Kahan's contract, and notified the Provost of SRU, Dr. William Williams, who in turn notified President Smith.

Around the same time, on March 19, Charlene Winslow met with Dean Tsuquiashi-Daddesio to discuss problems her son had with Kahan while he was in Kahan's class. She also sent a letter to Craig complaining about Kahan's treatment of her

3

son.  She accused Kahan of targeting and harassing her son, and notified Craig of Kahan's failure to grant an extension and the comment Kahan made about her son staring at a "good looking guy."

Craig met with Kahan in person on March 23 to inform Kahan he no longer supported the renewal of Kahan's contract.  On March 25, Dean Tsuquiashi-Daddesio informed Kahan she also had withdrawn her support for renewing his contract.  Kahan was afforded an opportunity to respond, and on March 28 submitted a memorandum to Provost Williams defending his performance.  But on March 30, Kahan received official notification from President Smith that SRU would not renew his contract, and that his appointment would expire on June 4, 2010.  Kahan filed a grievance challenging the non-renewal of his contract, but it was denied on May 11.  The collective bargaining agreement limited his grievance rights solely to SRU's failure to provide timely notice of non-renewal, and Kahan's notice was timely.

On May 18, 2010, Kahan was involved in an incident with Ms. Winslow.  Winslow reported to SRU campus police that Kahan had entered her office, called her a "b****," called her son a "retard," wished they both "die of something painful," and threw a DVD at her.  Kahan denies making these statements, and instead claims that while he was cleaning out his office, he merely asked Winslow to put away a DVD for him.  While SRU campus police filed a criminal complaint for harassment against Kahan, the Butler County District Attorney decided not to pursue the case.

The vacancy created by the non-renewal of Kahan's contract remained unfilled for a year.  During the 2010-2011 academic year, Kahan's classes were taught by a female

4

faculty member.  Kahan applied for the position in 2011, but was not selected.  The permanent replacement for Kahan's position was male.

On March 29, 2012, Kahan filed a complaint in District Court alleging SRU, along with several individual defendants, violated state and federal law during his employment and in deciding not to renew his contract.  Specifically, he asserted gender-based discrimination, retaliation, and hostile work environment claims under Title VII, 42 U.S.C. § 2000e-1 et seq., and Title IX, 20 U.S.C. § 1681; constitutional claims under 42 U.S.C. § 1983 alleging violations of his equal protection, free speech, and due process rights; and state-law claims of employment discrimination, promissory estoppel, intentional interference with contract, malicious prosecution, and defamation.

Following discovery, the defendants moved for summary judgment.  On September 24, 2014, the District Court granted the motion as to all of the claims brought under federal law, and declined to exercise supplemental jurisdiction over the state-law claims.[2]  This appeal followed.

## II.[3]

---

[2] Kahan chose not to appeal the District Court's dismissal of his state-law claims.

[3] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have appellate jurisdiction under 28 U.S.C. § 1291.  Our review of the District Court's grant of summary judgment is plenary.  *Seamans v. Temple Univ.*, 744 F.3d 853, 859 (3d Cir. 2014).  A moving party is entitled to summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court must view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to that party.  *Scott v. Harris*, 550 U.S 372, 378 (2007).

Title VII prohibits employers from discriminating against individuals on the basis of gender. In the absence of direct evidence of discrimination, a plaintiff may prove gender discrimination according to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of unlawful discrimination. In a reverse discrimination case such as this one, "all that should be required to establish a prima facie case . . . is for the plaintiff to present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII." *Iadimarco v. Runyon*, 190 F.3d 151, 161 (3d Cir. 1999).

Kahan alleges that Winslow, the secretary for SRU's History Department, used her influence within the Department to ensure Kahan's contract would not be renewed because she held stereotypical views about him as a "violent male." He also alleges, somewhat paradoxically, that Winslow did not want his contract renewed because he "engaged in gender non-conforming behavior," as evidenced by her deposition testimony that she thought Kahan was "weird." He claims this gender stereotyping led to his dismissal from SRU.

Even assuming Winslow wielded as much influence as Kahan claims, Kahan's allegations do not establish a prima facie case of gender discrimination. To the extent Winslow viewed Kahan as violent, she only expressed those views after the May 18 incident, more than a month after the decision not to renew Kahan's contract was made.

6

Therefore, Kahan's allegation of bias cannot logically be linked to his dismissal from SRU.

Furthermore, Winslow's comment that she thought Kahan was "weird" hardly demonstrates gender bias. When asked to elaborate on what she found weird about him, Winslow said, "I thought he was disingenuous. He was overly nice, he said he knew that really the secretaries were the ones that ran things. And I thought he's just trying to butter me up." App. 556. Her description could just as easily apply to a woman as to a man. In context, it is clear that Winslow's view of Kahan as "weird" was not motivated by his gender. Faced with this evidence, no reasonable juror could conclude that Kahan's contract was not renewed because he is male.

Kahan further alleges he was subjected to a hostile work environment at SRU because of his male gender. To succeed on a hostile work environment claim, Kahan must establish: 1) he suffered intentional discrimination because of his gender; 2) the discrimination was severe or pervasive; 3) the discrimination detrimentally affected him; 4) the discrimination would detrimentally affect a reasonable person in like circumstances; and 5) the existence of *respondeat superior* liability. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

According to Kahan, Winslow's accusations that he sexually harassed her son in class subjected him to a hostile work environment because the accusations were false and detrimentally affected him. But even if Kahan is correct that Winslow falsely accused him of harassing her son, he offers no evidence that Winslow's allegations were made because of Kahan's gender. Instead, Winslow's complaints about Kahan's teaching

7

appeared to stem from his refusal to give her son an extension on a final report in Kahan's class. In the absence of evidence that Winslow's accusations against Kahan were due to his gender, no reasonable juror could conclude that Kahan was subjected to a hostile work environment.

Kahan next asserts procedural and substantive due process violations in the decision to not renew his contract. His substantive due process claim is without merit, as we have previously held that a tenured professorship is not a property interest entitled to protection under the substantive component of the Due Process Clause. *Nicholas v. Penn. State Univ.*, 227 F.3d 133, 136 (3d Cir. 2000). Kahan was not even a tenured professor—he was hired on a probationary one-year contract. Accordingly, his substantive due process rights were not violated.

Kahan's procedural due process claim fares no better. While Kahan is correct that he was entitled to procedural due process, *see Dee v. Borough of Dunmore*, 549 F.3d 225, 231 (3d Cir. 2008), there is no doubt he received it. He claims he was given no chance to respond after Craig and Dean Tsuquiashi-Daddesio withdrew their support for the renewal of his contract, but this is simply not true. He was given a chance to respond in the March 28 letter he sent to Provost Williams. Moreover, he filed a grievance following the nonrenewal of his contract, but because the collective bargaining agreement limited his rights as a probationary employee, his grievance was denied. Kahan provides no evidence that SRU failed to follow the procedures in his contract in deciding not to renew it, and no reasonable jury could conclude otherwise.

8

Finally, Kahan asserts that his First Amendment rights were violated because his contract was not renewed following his complaints that he felt pressure to change a student's grade. But he provides no evidence tying the nonrenewal to his complaints about grade inflation. Instead, the evidence demonstrates his contract was not renewed due to his failure to turn in his grades on time.

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.